**Francis Nolan AUGUSTINE, Plaintiff-Appellant,**

v.

**John DOE, Deputy Sheriff, Lafayette Parish, et al., Defendants-Appellees.**

No. 82–4573.

United States Court of Appeals,
Fifth Circuit.

Aug. 16, 1984.

as a result of the racially discriminatory and arbitrary manner in which the death penalty was administered.

Gerald J. Block, Lafayette, La., for plaintiff-appellant.

Domengeaux & Wright, Robert K. Tracy, Lafayette, La., for defendants-appellees.

Before WISDOM, REAVLEY, and JOHNSON, Circuit Judges.

WISDOM, Circuit Judge:

This appeal concerns the extent to which a plaintiff's rights under 42 U.S.C.A. § 1983 (1981)[1] are limited by the availability of postdeprivation state law remedies. The complaint charges the defendants with violating § 1983 by depriving the plaintiff,

---

1. Section 1983 states in pertinent part:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Francis N. Augustine, of his constitutional rights. The complaint alleges that the defendants arrested the plaintiff at his home without a warrant, took him and his dog to the police station by force, and detained him there until they could take his dog from him. On the authority of *Parratt v. Taylor*, 1981, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420, the district court dismissed the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The court apparently was of the view that the availability of state tort remedies renders constitutional any state action that can be characterized as a tort.[2] That view is erroneous. We reverse the district court's judgment and remand the case.

### I. *Facts* [3]

At 10:00 p.m., on May 13, 1981, Augustine, an elderly black man, was sleeping at his home in Lafayette, Louisiana, when he was awakened by a telephone call from a deputy sheriff. The deputy identified himself, asked Augustine whether he owned a certain dog, and then asked whether Augustine would surrender the dog to Preston Smith. Augustine refused. The deputy then told the plaintiff that his dog may have been stolen from Smith two years earlier. The plaintiff asserted that he had paid $20 for the dog in 1979 and that he was the dog's lawful owner.

At 11:30 p.m. that night, two deputy sheriffs arrived at the plaintiff's home carrying a sawed-off shotgun and other weapons. They awakened Augustine and told him to get dressed because he was being taken to the sheriff's department in downtown Lafayette. They entered the home without either a search warrant or an arrest warrant and took the plaintiff and his dog, at gunpoint, to the sheriff's department. While at the department, the plaintiff was threatened with arrest, imprisonment, and fines. The police detained the plaintiff until they could take his dog from him. They then allowed Augustine to return home.

On April 22, 1982, the plaintiff filed this civil rights suit against the State of Louisiana, the Lafayette Parish Police Jury, the Lafayette sheriff, and two named unknown deputy sheriffs. The complaint alleges that the plaintiff suffered a "violation of due process, denial of equal protection, denial of life, denial of liberty, deprivation of property, invasion of privacy, [and] infringement of freedom", and that the plaintiff is therefore entitled to relief under 42 U.S.C.A. §§ 1981–1986 (1981).[4] The complaint seeks compensatory damages, punitive damages, reasonable attorney's fees, and return of the plaintiff's dog.

During the summer of 1982, the district court dismissed the complaint with respect to the state and the police jury. On November 22, 1982, the court dismissed the complaint with respect to the sheriff and the two deputy sheriffs. The ground for this dismissal was that the complaint failed to state a claim upon which relief can be granted.[5] The plaintiff appeals the dismissal of the sheriff and deputy sheriffs.

### II. *Alleged Constitutional Violations*

■ There are two essential elements to any section 1983 action. First, the conduct complained of must have been committed by a person acting under color of state law; and second, this conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution

---

**2.** *See* Reasons for Ruling, W.D.La. Dec. 21, 1982, Supp. Record at 6; Defendants' Memorandum in Favor of Motion To Dismiss, Oct. 22, 1982, Record at 57–58.

**3.** Because this appeal is from a dismissal of the complaint under Rule 12(b) of the Federal Rules of Civil Procedure, we accept all of the facts alleged in the complaint as true and resolve all doubts in favor of the plaintiff. *E.g., Hull v. City of Duncanville*, 5 Cir.1982, 678 F.2d 582, 583.

**4.** The district court's dismissal of the complaint addressed only the viability of the complaint under § 1983. Because we reverse the district court's ruling, we need not address whether the complaint states a cause of action under §§ 1981, 1982, 1985, or 1986.

**5.** *See generally* Fed.R.Civ.P. 12(b)(6).

or laws of the United States. *E.g., Parratt v. Taylor,* 1981, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420. The parties do not dispute that the defendants acted under color of state law in committing the actions of which the plaintiff complains. Viewed in the light most favorable to the plaintiff, the complaint asserts two constitutional violations: an unreasonable seizure, in violation of the fourth amendment as incorporated into the fourteenth amendment; and deprivation of liberty and property without due process of law, in violation of the due process clause of the fourteenth amendment.[6] We examine each asserted violation separately.

### III. *The Fourth Amendment*

■ The facts alleged in the complaint establish a clear violation of the fourth amendment. In *Payton v. New York,* 1980, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639, the Supreme Court held that, in the absence of exigent circumstances, the fourth amendment prohibits the police from making a warrantless and nonconsensual entry into a suspect's home for the purpose of effecting an arrest. The Court recently reaffirmed and extended *Payton* by holding that, in the absence of exigent circumstances, the police may not enter a house without a warrant or consent to make an arrest for a nonjailable offense. *Welsh v. Wisconsin,* 1984, —— U.S. ——, 104 S.Ct. 2091, 80 L.Ed.2d 732. Augustine's complaint alleges that the Lafayette deputy sheriffs entered his house and arrested him without an arrest warrant or a search warrant. None of the facts alleged implies that Augustine consented to this entry or that exigent circumstances justified the warrantless entry. The fourth amendment violation established by these allegations is unmistakable.

The district judge apparently believed that, under *Parratt v. Taylor,* the unconstitutionality of these actions was alleviated by the availability of state tort remedies through which the plaintiff could obtain redress for the allegedly illegal arrest. The district judge's position rests upon an erroneous reading of *Parratt.* The plaintiff in *Parratt* alleged that he was deprived of property without due process of law when prison officials negligently lost a hobby kit that the plaintiff had ordered through the mail. The Supreme Court agreed that the plaintiff had been deprived of property within the meaning of the fourteenth amendment. 451 U.S. at 536–37, 101 S.Ct. at 1913. The Court went on to hold that, because a predeprivation hearing was infeasible in these circumstances, the availability of a postdeprivation damages remedy under state law negated the contention that the deprivation was without due process of law. *Id.* at 540–44, 101 S.Ct. at 1915–16. In reaching this conclusion, however, the Court indicated that its analysis would not apply to alleged violations of *substantive* constitutional proscriptions applicable to the states because of incorporation into the due process clause of the fourteenth amendment:

> "[The plaintiff's] claims differ from the claims which were before us in Monroe v. Pape, supra, which involved violations of the Fourth Amendment, and the claims presented in Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), which involved alleged violations of the Eighth Amendment. Both of these Amendments have been held applicable to the States by virtue of the adoption of the Fourteenth Amendment. [The plaintiff] here refers to no other right, privilege, or immunity secured by the Constitution or federal laws other than the Due Process Clause of the Fourteenth Amendment simpliciter."

451 U.S. at 536, 101 S.Ct. at 1913 (citations omitted).

---

**6.** Paragraph 16 of the complaint asserts that the defendants deprived the plaintiff of his right to the equal protection of the laws. The complaint does not, however, set forth any facts to support this assertion. In reviewing a Rule 12(b) dismissal, we do not take account of such wholly conclusory, factually baseless allegations. *See, e.g., Davidson v. Georgia,* 5 Cir.1980, 622 F.2d 895, 897.

In *Monroe v. Pape*, 1961, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492, a case expressly distinguished in the above passage from *Parratt*, the plaintiff alleged that municipal police officers had violated his rights under the fourth amendment. The Court explicitly rejected the defendants' argument that, because state law proscribed the defendants' conduct, the plaintiff could not recover under section 1983:

"It is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked. Hence the fact that Illinois by its constitution and laws outlaws unreasonable searches and seizures is no barrier to the present suit in the federal court."

365 U.S. at 183, 81 S.Ct. at 481.

To hold *Parratt* applicable to the alleged fourth amendment violation in the present case would be to write *Monroe* out of existence, a result clearly not intended by *Parratt*. *See also Bonner v. Coughlin*, 7 Cir. 1975 (Stevens, J.), 517 F.2d 1311, 1320, *modified en banc*, 1976, 545 F.2d 565, *cert. denied*, 1978, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529, which in reaching a holding identical with that of *Parratt* noted that its holding was consistent with *Monroe*. Thus, a number of courts have held *Parratt* inapplicable to alleged violations of substantive rights incorporated into the fourteenth amendment. *See Wolf-Lillie v. Sonquist*, 7 Cir.1983, 699 F.2d 864, 872 (fourth amendment); *Palmer v. Hudson*, 4 Cir.1983, 697 F.2d 1220, 1225 (fourth amendment), *aff'd in part, rev'd in part on other grounds*, 1980, — U.S. —, 104 S.Ct. 3194, 82 L.Ed.2d 393 [1984]; *Daniels v. Williams*, 4 Cir.1983, 720 F.2d 792, 796 n. 3; *Duncan v. Poythress*, 5 Cir.1981, 657 F.2d 691, 704–05, *cert. dismissed*, 1982, 459 U.S. 1012, 103 S.Ct. 368, 74 L.Ed.2d 504; *Juncker v. Tinney*, D.Md.1982, 549 F.Supp. 574, 582; *Al-Mustafa Irshad v. Spann*, E.D.Va.1982, 543 F.Supp. 922, 926 (dicta). *See also Gerstein v. Pugh*, 1975, 420 U.S. 103, 125 n. 27, 95 S.Ct. 854, 869 n. 27, 43 L.Ed.2d 54, stating that the Supreme Court's due process decisions do not apply to the question of "what process is due" under the fourth amendment, and *Ingraham v. Wright*, 1977, 430 U.S. 651, 653, 658, 97 S.Ct. 1401, 1405, 51 L.Ed.2d 711, implying that the availability of postdeprivation state-law remedies is irrelevant to the issue whether the defendants' conduct violated the eighth amendment.

In *Hudson v. Palmer*, 1984, — U.S. —, 104 S.Ct. 3194, 82 L.Ed.2d 393 [1984] the Supreme Court held that *Parratt* applies to intentional as well as negligent deprivation of property. But the Court carefully limited its discussion and holding to alleged violations of procedural due process. Concurring in this part of the Court's opinion, Justice Stevens, joined by three other justices, stated,

"I do not understand the Court's holding to apply to conduct that violates a substantive constitutional right—actions governmental officials may not take no matter what procedural protections accompany them, see *Parratt*, 451 U.S. at 545 [101 S.Ct. at 1917] (Blackmun, J., concurring); see also *id.* at 552–553 [101 S.Ct. at 1921–22] (Powell, J., concurring in result)...."

Nothing in the majority opinion supports a contrary reading. Nor would such a reading be consistent with the rationale of *Parratt*. *Parratt* concerns alleged violations of procedural due process: whether a state has provided procedures that adequately protect individuals from arbitrary or erroneous deprivations of life, liberty, or property. An allegation that a state action has violated an individual's right to procedural due process is thus a condemnation of the procedures that attended the action and not an assessment of the constitutionality of the action itself. P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, *Hart and Wechsler's The Federal Courts and the Federal System* 236 (Supp.1981). In such a case "[t]he controlling inquiry is solely whether the State is in a position to provide for predeprivation process." *Hudson*, — U.S. at —, 104 S.Ct. at 3203–04. The State does not violate procedural due process by

failing to provide a procedure it cannot practically provide. In contrast, when a plaintiff alleges that state action has violated an independent substantive right, he asserts that the action itself is unconstitutional. If so, his rights are violated no matter what process precedes, accompanies, or follows the unconstitutional action.[7] The availability of notice and a hearing is therefore irrelevant; *Parratt's* concern with the feasibility of predeprivation process has no place in this context. *See The Supreme Court, 1981 Term,* 96 Harv.L. Rev. 62, 105 (1982).

In short, *Parratt* applies only when a plaintiff asserts a violation of his right to procedural due process. *Parratt* is irrelevant if the plaintiff alleges a violation of a substantive right protected by the Constitution against infringement by state governments. The district court's dismissal of Augustine's fourth amendment complaint on the basis of *Parratt* was erroneous.

### IV. *Procedural Due Process*

In determining whether state action has violated an individual's right to procedural due process, a court must address two questions. First, it must decide whether the state action has deprived the individual of a protected interest—life, liberty, or property. Finding such a deprivation, the court must then determine whether the state procedures available for challenging the deprivation satisfy the requirements of due process. *See Hudson,* —— U.S. at ——, 104 S.Ct. at 3203–04; *Logan v. Zimmerman Brush Co.,* 1982, 455 U.S. 422, 428, 102 S.Ct. 1148, 1153, 71 L.Ed.2d 265; *Parratt v. Taylor,* 451 U.S. at 535–37, 101 S.Ct. at 1912–13; *Ingraham v. Wright,* 1977, 430 U.S. 651, 672, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711.

Augustine's complaint asserts that the plaintiff was arrested and detained without probable cause, and the factual allegations of the complaint support that assertion. Such actions clearly constitute a deprivation of liberty within the meaning of the

fourteenth amendment. *See, e.g., Brewer v. Blackwell,* 5 Cir.1982, 692 F.2d 387, 395 & n. 11; *Patzig v. O'Neil,* 3 Cir.1978, 577 F.2d 841, 848; *Duriso v. K-Mart No. 4195, Division of S.S. Kresge Co.,* 5 Cir.1977 (per curiam), 559 F.2d 1274, 1277. The plaintiff also alleges that the defendants took his dog from him even though he is the lawful owner of the dog. This action undeniably deprived the plaintiff of property. Augustine has thus alleged a deprivation of protected interests.

The district court nevertheless dismissed. The implicit basis for its decision was that, even though the defendants may have deprived the plaintiff of liberty and property, the alleged deprivation was not without due process, because the plaintiff could obtain redress under Louisiana tort law.

As we note above, and as we explain more fully in another decision of this panel, the "controlling question" in determining the applicability of *Parratt* is "whether the State is in a position to provide for predeprivation process". *Hudson,* —— U.S. at ——, 104 S.Ct. at 3203–04; *see Thibodeaux v. Bordelon,* 5 Cir.1984, 740 F.2d 329 at —— [1984]. *Parratt* posits a distinction between (1) the random and unauthorized (and hence unpredictable) conduct of a state actor, and (2) conduct that the state can contain and direct by instituting procedural safeguards. *See Logan v. Zimmerman Brush Co.,* 1982, 455 U.S. 422, 435–37, 102 S.Ct. 1148, 1157–58, 71 L.Ed.2d 265; *Daniels v. Williams,* 4 Cir.1983, 720 F.2d 792, 795; *The Supreme Court, 1981 Term,* 96 Harv.L.Rev. 62, 101, 104 (1982). If the state cannot protect the individual by imposing predeprivation procedures, or if quick action is essential, the best the state can do is to allow injured individuals to recover damages after the injury has occurred. *Parratt,* 451 U.S. at 539, 101 S.Ct. at 1914. If, however, the state is able to provide the affected individual with a hearing before the deprivation occurs, due pro-

---

**7.** In some cases, of course, a particular procedural safeguard is part of the substantive right, as in the sixth amendment's right to trial by jury.

cess usually requires that the state do so.[8] *See Fuentes v. Shevin,* 1972, 407 U.S. 67, 80–82, 92 S.Ct. 1983, 32 L.Ed.2d 556; Note, *Redefining the Parameters of Section 1983: Parratt v. Taylor,* 23 B.C.L.Rev. 1219, 1236 (1982). The availability of a postdeprivation tort remedy does not satisfy the requirements of due process in such cases. *See Logan,* 455 U.S. at 436, 102 S.Ct. at 1158.

■ Before *Hudson v. Palmer,* most courts had held *Parratt* inapplicable to intentional deprivations of liberty[9] and property.[10] *Hudson* rejects any categorical distinction between intentional and negligent actions, because the intentional wrongs of individual state employees are no more predictable (and arguably are *less* predictable) than negligent actions. —— U.S. at ——, 104 S.Ct. at 3203–04. But *Hudson,* like *Parratt* and *Logan,* is based on the distinction between "random and unauthorized

conduct" and "conduct pursuant to established state procedure". *Hudson,* —— U.S. at ——, 104 S.Ct. at 3203–04. In the present case, Augustine charges the defendants with violating his rights under the due process clause by arresting and detaining him without probable cause and by forcing him to surrender his dog, which he lawfully owned. The allegations of the complaint do not in any way imply that these intentional actions were "random and unauthorized". Nor can we say, simply from the allegations of the complaint, that it would have been impracticable or infeasible for the government to have provided some kind of predeprivation procedural safeguard.[11] Of course, after further proceedings it may become evident that any wrongful acts were "random and unauthorized" and therefore subject to *Parratt;* if so, the existence of adequate postdeprivation state remedies would justify dismissal. On the other hand, the alleged acts may

**8.** In some situations a predeprivation hearing, though feasible, may not be required. In *Ingraham v. Wright,* 1977, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711, the Supreme Court held that due process does not require public school teachers to afford students a hearing before administering corporal punishment. Reasoning that a requirement of such a prior hearing could disrupt the maintenance of discipline in the public schools, the Court determined that the benefit of advance procedural safeguards would be outweighed by their cost. *Id.* at 682, 97 S.Ct. at 1418. The Court therefore concluded that postdeprivation tort remedies "are fully adequate to afford due process". *Id.* at 672, 97 S.Ct. at 1413.

**9.** *Brewer v. Blackwell,* 5 Cir.1982, 692 F.2d 387, 395; *Wakinekona v. Olim,* 9 Cir.1981, 664 F.2d 708, 715, *rev'd on other grounds,* 1983, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813; *Howse v. DeBerry Correctional Inst.,* M.D.Tenn.1982, 537 F.Supp. 1177, 1178, 1180. *Contra Ellis v. Hamilton,* 7 Cir.1982, 669 F.2d 510, 515, *cert. denied,* 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631; *Rutledge v. Arizona Bd. of Regents,* 9 Cir.1981, 660 F.2d 1345, 1352, *aff'd on other grounds sub nom. Kush v. Rutledge,* 1983, 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413.

**10.** *McCrae v. Hankins,* 5 Cir.1983, 720 F.2d 863, 870; *McCoy v. Gordon,* 5 Cir.1983, 709 F.2d 1060, 1062; *Vail v. Board of Educ.,* 7 Cir.1983, 706 F.2d 1435, 1440–41, *aff'd by an equally divided Court,* —— U.S. ——, 104 S.Ct. 2144, 80 L.Ed.2d 377 (1984); *Madyun v. Thompson,* 7

Cir.1981, 657 F.2d 868, 873; *Howell v. Tanner,* 5 Cir.1981, 650 F.2d 610, 616 & n. 9, *cert. denied,* 1982, 456 U.S. 918, 919, 102 S.Ct. 1775, 1777, 72 L.Ed.2d 178, 180; *Peters v. Township of Hopewell,* D.N.J.1982, 534 F.Supp. 1324, 1333–34; *Tarkowski v. Hoogasian,* N.D.Ill.1982, 532 F.Supp. 791, 794; *see Kimbrough v. O'Neil,* 7 Cir.1976 (en banc), 545 F.2d 1059, 1060 & 1061 n. 5; *Parker v. Rockefeller,* N.D.W.Va.1981, 521 F.Supp. 1013, 1014; *cf. Reimer v. Short,* 5 Cir. 1978, 578 F.2d 621, 628–29, *cert. denied,* 1979, 440 U.S. 947, 99 S.Ct. 1425, 59 L.Ed.2d 635; *Clayton v. Shaw,* 5 Cir.1977 (per curiam), 548 F.2d 1155, 1156, *cert. denied,* 434 U.S. 873, 98 S.Ct. 220, 54 L.Ed.2d 153; *Snell v. Short,* 5 Cir.1977 (per curiam), 544 F.2d 1289, 1291. *Contra Vicory v. Walton,* 6 Cir.1983, 721 F.2d 1062, 1064–66; *Wolf-Lillie v. Sonquist,* 7 Cir. 1983, 699 F.2d 864, 871; *Palmer v. Hudson,* 4 Cir.1983, 697 F.2d 1220, 1222, *aff'd in relevant part,* —— U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393 [1984]; *Sheppard v. Moore,* M.D.N.C.1981, 514 F.Supp. 1372, 1376; *cf. Barker v. Norman,* 5 Cir.1981, 651 F.2d 1107, 1131 n. 7.

**11.** Indeed, we cannot say with certainty that some predeprivation procedural safeguard was *not* provided Mr. Augustine. Whether the government provided predeprivation procedure and, if so, whether the procedure satisfies the requirements of due process are issues for the district court to resolve on remand. *See generally Mathews v. Eldridge,* 1976, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, which sets forth the analysis for determining whether state procedure satisfies due process.

have represented official policy. Those actions might then qualify as "authorized" and "pursuant to established state procedure"; if so, under *Logan* the availability of postdeprivation remedies would not bar Augustine's § 1983 procedural due process action. *Parratt v. Taylor* may therefore be inapplicable, and it was error, at this stage of the proceedings, for the district court to dismiss the complaint because state tort remedies are available.

### V. *Conclusion*

*Parratt v. Taylor* is not a magic wand that can make any section 1983 action resembling a tort suit disappear into thin air. *Parratt* applies only when the plaintiff alleges a deprivation of procedural due process; it is irrelevant when the plaintiff has alleged a violation of some substantive constitutional proscription. Further, in the context of procedural due process, *Parratt* applies only when the nature of the challenged conduct is such that the provision of predeprivation procedural safeguards is impracticable or infeasible.

Augustine's complaint alleges a violation of his substantive rights under the fourth amendment, as applied to the states through the fourteenth amendment. The complaint also challenges, on the ground of procedural due process, conduct against which the government may be able to provide predeprivation procedural protection. The district court erred by dismissing the complaint on the basis of *Parratt v. Taylor*.

We REVERSE the judgment of the district court and remand the case for further proceedings consistent with this opinion.