**James THIBODEAUX,
Plaintiff-Appellant,**

v.

**James BORDELON, Linda Brown, et al., Defendants-Appellees.**

No. 83–4027.

United States Court of Appeals, Fifth Circuit.

Aug. 16, 1984.

Edward J. Milligan, Jr., Lafayette, La., for plaintiff-appellant.

Fontenot & Mitchell, John Clyde Fontenot, Ville Platte, La., for Dalbes Fontenot.

Jack Fruge, Sr., Christopher B. Fruge, Ville Plate, La., for all defendants-appellees except Fontenot.

Before WISDOM, REAVLEY, and JOHNSON, Circuit Judges.

WISDOM, Circuit Judge:

This appeal presents the question whether a pretrial detainee suffers a deprivation of any constitutional rights when he sustains bodily injury because of the negligence of city officials responsible for supervising the jail housing the detainee. The question turns particularly on the applicability of *Parratt v. Taylor*, 1981, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420, to an alleged negligent deprivation of liberty without due process. The district court held that the plaintiff in this case had not alleged facts establishing a constitutional violation. The court accordingly dismissed the complaint under rule 12(b) of the Federal Rules of Civil Procedure. We agree with the district court and affirm its judgment.

## I. *Facts* [1]

The plaintiff, James Thibodeaux, filed this civil rights suit against Dalbes

---

1. Because this appeal is from a dismissal of the complaint under Rule 12(b) of the Federal Rules of Civil Procedure, we accept all of the facts alleged in the complaint as true and resolve all doubts in favor of the plaintiff. *E.g., Hull v. City of Duncanville,* 5 Cir.1982, 678 F.2d 582, 583.

Fontenot, a co-detainee, and various officials and employees of the city of Ville Platte, Louisiana, including the mayor, members of the governing body of the city, the chief of police, and the custodian of the city jail. In his complaint, Thibodeaux alleges that he was detained in the Ville Platte City Jail on May 8, 1980, awaiting the disposition of charges against him for simple burglary and theft. The defendant Dalbes Fontenot, who had been confined in the cell adjacent to Thibodeaux's, set fire to the jail. The plaintiff suffered severe and painful injuries as a result of the fire.

Thibodeaux alleges that Fontenot was intoxicated at the time of the fire and that the other defendants knew or should have known of Fontenot's intoxicated condition. The complaint asserts that the defendants acted negligently by incarcerating the plaintiff in a cell next to that of an intoxicated inmate likely to injure other inmates, and by failing to exercise adequate supervision to protect the plaintiff from injury. The complaint does not allege any deficiencies in the procedures followed by jailhouse personnel in dealing with intoxicated inmates. Nor does the plaintiff charge the city officials and employees with conduct any more culpable than the alleged negligence.[2]

The complaint asserts that the defendants' negligence deprived the plaintiff of rights, privileges, and immunities secured by the United States Constitution, particularly his rights under the eighth and fourteenth amendments. Thibodeaux contends that he is entitled to relief under 42 U.S.C.A. § 1983 (1981).[3] He seeks compensatory damages for bodily pain and injuries and for his medical expenses, as well as punitive damages and attorney's fees.

Dalbes Fontenot, the arsonist co-detainee, and the city officials and employees filed separate motions to dismiss the complaint for lack of subject matter jurisdiction.[4] The district court granted both motions, and the plaintiff appealed.

## II. Defendant Dalbes Fontenot

■■■ The district court treated Dalbes Fontenot's motion as a motion to dismiss for failure to state a claim upon which relief can be granted.[5] The court held that the plaintiff had failed to state a claim against Dalbes Fontenot under section 1983, because that defendant had not acted under color of state law. See Ruling of Dec. 3, 1982, W.D.La., Record at 103–04. This holding is unquestionably correct.

Section 1983 affords redress only for conduct committed by a person acting under color of state law. E.g., Flagg Brothers, Inc. v. Brooks, 1978, 436 U.S. 149, 155–56, 98 S.Ct. 1729, 1732–33, 56 L.Ed.2d

---

**2.** Paragraph 11 of the complaint asserts that the plaintiff is entitled to punitive damages because of the defendants' "gross negligence, willful or wanton misconduct, and wreckless [sic] disregard for the civil rights" of the plaintiff. The complaint sets forth a factual basis for leveling this charge against the defendant Dalbes Fontenot. With respect to the other defendants, however, the charge is baseless.

In reviewing a Rule 12(b) dismissal, we do not take account of allegations that are wholly conclusory and that do not set forth *facts* that, if proved, would warrant the relief sought. *See, e.g., Davidson v. Georgia,* 5 Cir.1980, 622 F.2d 895, 897. Accordingly we assume that the defendant city officials and employees are guilty, at most, of negligence.

**3.** Section 1983 states in pertinent part:
"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."
42 U.S.C.A. § 1983 (1981). Paragraph 1 of the complaint states that "[t]he jurisdiction of this Court is based upon 42 USCA Section 1983 et seq., the United States Constitution, the United States Code and Louisiana Civil Code Article[s] 2315, 2316 and 2317...." Although, taken alone, this statement might be considered to allege bases for relief other than § 1983, it is clear from the remainder of the complaint and from plaintiff's appellate brief and oral argument that § 1983 is the sole asserted basis for relief.

**4.** *See generally* Fed.R.Civ.P. 12(b)(1).

**5.** *See generally* Fed.R.Civ.P. 12(b)(6).

185. A person acts under color of state law only when exercising power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law". *United States v. Classic,* 1941, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368; *accord, e.g., Polk County v. Dodson,* 1981, 454 U.S. 312, 317–18, 102 S.Ct. 445, 449–50, 70 L.Ed.2d 509. Thibodeaux's complaint, of course, could not allege facts implying that Dalbes Fontenot acted with any such authority when he set fire to the Ville Platte City Jail. We affirm the district court's dismissal of the complaint with respect to Dalbes Fontenot.

### III. *The Other Defendants*

In granting the motion filed by the city officials, the district court held that it lacked subject matter jurisdiction over the action against these defendants. The basis for the court's decision was that, "for reasons set forth in *Parratt v. Taylor*", the facts alleged in the complaint did not establish a violation of section 1983. Reasons for Ruling, W.D.La. Jan. 4, 1983, Record at 115. The court's rationale is apparent from its reference to *Parratt v. Taylor,* 1981, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420. The plaintiff in *Parratt* alleged that he was deprived of property without due process of law when prison officials negligently lost a hobby kit that the plaintiff had ordered through the mail. The Supreme Court held that the availability of a postdeprivation action for damages under state law negated the contention that the deprivation was without due process of law. *Id.* at 540–44, 101 S.Ct. 1915–17. Accordingly, the district judge in the present case concluded that the availability of a tort remedy under Louisiana law vitiated the plaintiff's cause of action based on the alleged negligence of the city officials.

Viewed in the light most favorable to the plaintiff, the complaint asserts two constitutional violations: subjection of the plaintiff to cruel and unusual punishment, in violation of the eighth amendment as incorporated into the fourteenth amendment; and deprivation of a liberty interest without due process of law, in violation of the due process clause of the fourteenth amendment. We examine each asserted violation separately.

### A. *The Eighth Amendment*

■ We agree with the district court's conclusion that the complaint does not allege facts constituting a violation of the eighth amendment. We do not agree, however, for the reasons implied by the district court's ruling. As we explain more fully in another decision of this panel, *Augustine v. Doe,* 5 Cir.1984, 740 F.2d 322, at 325 [1984], the *Parratt* analysis applies only to asserted violations of procedural due process; it does not apply to alleged violations of substantive constitutional proscriptions applicable to the states because of incorporation into the due process clause of the fourteenth amendment. *Accord Daniels v. Williams,* 4 Cir. 1983, 720 F.2d 792, 796 n. 3; *Wolf-Lillie v. Sonquist,* 7 Cir.1983, 699 F.2d 864, 871–72; *Palmer v. Hudson,* 4 Cir.1983, 697 F.2d 1220, 1225, *aff'd in part, rev'd in part on other grounds,* 1984, —— U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393 [1984]; *Duncan v. Poythress,* 5 Cir.1981, 657 F.2d 691, 704– 05, *cert. dismissed,* 1982, 459 U.S. 1012, 103 S.Ct. 368, 74 L.Ed.2d 504; *Juncker v. Tinney,* D.Md.1982, 549 F.Supp. 574, 582; *Al-Mustafa Irshad v. Spann,* E.D.Va.1982, 543 F.Supp. 922, 926 (dicta); *The Supreme Court, 1981 Term,* 96 Harv.L.Rev. 62, 105 (1982). See also *Gerstein v. Pugh,* 1975, 420 U.S. 103, 125 n. 27, 95 S.Ct. 854, 869 n. 27, 43 L.Ed.2d 54, stating that the Supreme Court's due process decisions do not apply to the question of "what process is due" under the fourth amendment, and *Ingraham v. Wright,* 1977, 430 U.S. 651, 653, 658, 97 S.Ct. 1401, 1403, 1405, 51 L.Ed.2d 711, implying that the availability of postdeprivation state-law remedies is irrelevant to the issue whether the defendants' conduct violated the eighth amendment.

■ Notwithstanding the inapplicability of *Parratt* to Thibodeaux's eighth amendment allegation, Thibodeaux cannot recover on the basis of that amendment. The Supreme Court has made it clear that the

eighth amendment protects only those who have been *convicted* of a crime. *Ingraham v. Wright,* 430 U.S. at 664, 671–72, 97 S.Ct. at 1408, 1412–13. The amendment does not protect pretrial detainees. *Bell v. Wolfish,* 1979, 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447. As the Court explained in *Ingraham:*

> "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.... [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. *Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment."*

430 U.S. at 671 n. 40, 97 S.Ct. at 1412 n. 40 (emphasis added).[6] Because Thibodeaux was a pretrial detainee at the time of the alleged injury, he cannot state a cause of action under the eighth amendment. We turn now to the viability of Thibodeaux's suit under the due process clause of the fourteenth amendment.

### B. *Procedural Due Process*

*Parratt* held that, to allege a violation of procedural due process, it is not sufficient simply to assert a deprivation of a protected property interest by persons acting under color of state law. The plaintiff must also allege that the state procedures available for challenging the deprivation do not satisfy the requirements of due process. *See* 451 U.S. at 537, 101 S.Ct. at 1914. In addressing the issue of "what process is due a person when an employee of a State negligently takes his property", the Court noted that many of its decisions required that a hearing take place before the state interfered with a liberty or property interest of its citizens. In these cases, the deprivation was authorized by state procedure, and hence it was possible for the state to provide notice and a hearing before the deprivation occurred. *Id.* at 537–38, 101 S.Ct. at 1914. Other decisions, the Court continued, held that state postdeprivation remedies could satisfy the due process clause.

> "These cases recognize that either the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process can, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, satisfy the requirements of procedural due process....
>
> "... The fundamental requirement of due process is the opportunity to be heard and it is an 'opportunity which must be granted at a meaningful time and in a meaningful manner.' *Armstrong v. Manzo,* 380 U.S. 545, 552[, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 52] (1965). However, as many of the above cases recognize, we have rejected the proposition that 'at a meaningful time and in a meaningful manner' *always* requires the State to provide a hearing prior to the initial deprivation of property. This rejection is based in part on the impracticability in some cases of providing any preseizure hearing under a state-authorized procedure, and the assumption that at some time a full and meaningful hearing will be available."

*Id.* at 539–41, 101 S.Ct. at 1915 (footnotes omitted).

The Court reasoned that the justifications it had previously found sufficient to pretermit predeprivation process were applicable to deprivations of property arising from "a random and unauthorized act by a state employee". *Id.* at 541, 101 S.Ct. at

---

6. *See also Ingraham,* 430 U.S. at 685–86, 97 S.Ct. at 1420 (White, J., dissenting):

"[Punishment is] an institutionalized response to the violation of some official rule or regulation proscribing certain conduct and is imposed for the purpose of rehabilitating the offender, deterring the offender and others like him from committing the violation in the future, and inflicting some measure of social retribution for the harm that has been done."

1916. In such situations, "the loss is not a result of some established state procedure and the State cannot predict precisely when the loss will occur.... [I]t is not only impracticable, but impossible to provide a meaningful hearing before the deprivation." *Id.* Applying this reasoning to the case before it, the Supreme Court held that the available postdeprivation remedy—a suit for damages under the state tort claims act—satisfied the requirements of due process. The Court concluded, therefore, that the alleged deprivation of property was not without due process of law, and that the plaintiff's complaint failed to state a cause of action under section 1983. *Id.* at 543–44, 101 S.Ct. at 1916–17.

Application of the *Parratt* decision by the federal district and circuit courts has hardly been a model example of uniform judicial decisionmaking. The courts have split on the principal question posed by the present case: whether *Parratt* should apply to a negligent deprivation of a liberty interest. *See Jackson v. City of Joliet,* 1984, —— U.S. ——, 104 S.Ct. 1325, 79 L.Ed.2d 720 (White, J., dissenting from the denial of certiorari); *Haygood v. Younger,* 9 Cir.1983, 718 F.2d 1472, 1479 (summarizing cases), *reh'g en banc granted,* Mar. 28, 1984; *Juncker v. Tinney,* D.Md.1982, 549 F.Supp. 574, 576 (summarizing cases). Although the plurality in *Parratt* did not distinguish between liberty and property interests, it phrased its analysis solely in terms of property deprivations. And Justices Blackmun and White joined with the plurality only on the understanding that the decision did not apply to deprivations of life or liberty or to intentional deprivations of property. *See* 451 U.S. at 545–46, 101 S.Ct. at 1917–18 (Blackmun, J., concurring). Some courts have seized upon these aspects of the *Parratt* decision to restrict that decision to its facts. *See Howse v. DeBerry Correctional Institute,* M.D. Tenn.1982, 537 F.Supp. 1177, 1178, 1180; *Tarkowski v. Hoogasian,* N.D.Ill.1982, 532 F.Supp. 791, 795. Other courts have held *Parratt* applicable (A) to negligent deprivations of liberty interests, *see Daniels v. Williams,* 4 Cir.1983, 720 F.2d 792, 796;

*Flores v. Edinburg Consolidated Independent School District,* S.D.Tex.1983, 554 F.Supp. 974, 978; *Eberle v. Baumfalk,* N.D.Ill.1981, 524 F.Supp. 515, 517–18; (B) to negligent deprivations of life, *see Meshkov v. Abington Township,* E.D.Pa.1981, 517 F.Supp. 1280, 1285–86; and (C) to intentional deprivations of liberty interests, *see Ellis v. Hamilton,* 7 Cir.1982, 669 F.2d 510, 515, *cert. denied,* 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631. See also *Wolf-Lillie v. Sonquist,* 7 Cir.1983, 699 F.2d 864, 871, stating that *Parratt* requires federal courts to consider the adequacy and availability of remedies under state law before concluding that any deprivation of life, liberty, or property violates due process of law.

The Supreme Court lent some clarity to the confusion in its recent decision in *Hudson v. Palmer,* 1984, —— U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393. In *Hudson* the Court unanimously held that *Parratt* is not limited to negligent deprivations of property, but also applies to intentional deprivations of property. The court explained:

"While *Parratt* is necessarily limited by its facts to negligent deprivations of property, it is evident ... that its reasoning applies as well to intentional deprivations of property. The underlying rationale of *Parratt* is that when deprivations of property are effected through random and unauthorized conduct of a state employee, predeprivation procedures are simply 'impracticable' since the state cannot know when such deprivations will occur. We can discern no logical distinction between negligent and intentional deprivations of property insofar as the 'practicability' of affording predeprivation process is concerned. The State can no more anticipate and control in advance the random and unauthorized intentional conduct of its employees than it can anticipate similar negligent conduct."

*Id.* at ——, 104 S.Ct. at 3203. Much of the lack of uniformity in interpretation of *Parratt* stems from a tendency to view *Parratt* as a special rule designed to insulate negligent state actors from lawsuits in fed-

eral court. But *Hudson* demonstrates that *Parratt* is not an isolated rule but rather part of a consistent body of procedural due process doctrine. Viewed in the context of this doctrine, *Parratt* lends itself to principled application.

▮ The "touchstone" of procedural due process is "protection of the individual against arbitrary action of government". *Wolff v. McDonnell,* 1974, 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935. The goal of procedural due process analysis is to determine whether a state has provided adequate procedures to minimize efficiently the risk of arbitrary or erroneous deprivations of life, liberty, or property. In pursuing this goal, however, courts must also take into account society's interest in the efficient administration of government. The analysis requires consideration of three distinct factors: "First, the private interest that will be affected ...; second, the risk of an erroneous deprivation of such interest ... and the probable value, if any, of additional or substitute procedural safeguards; and finally, the [state] interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge,* 1976, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18.

▮ When the state is able to provide the affected individual with a hearing before the deprivation takes place, the competing interests must be balanced to determine whether due process requires a prior hearing and, if so, what type of hearing it should be. *See, e.g., Goss v. Lopez,* 1975, 419 U.S. 565, 577–84, 95 S.Ct. 729, 738–41, 42 L.Ed.2d 725; *Goldberg v. Kelly,* 1970, 397 U.S. 254, 260–71, 90 S.Ct. 1011, 1016–22, 25 L.Ed.2d 287; Note, *Redefining the*

*Parameters of Section 1983:* Parratt v. Taylor, 23 B.C.L.Rev. 1219, 1236 (1982). The balancing process usually dictates that the state provide some kind of predeprivation hearing, for such a procedure can be both minimally intrusive and effective in preventing arbitrary deprivations. This is not always the case, however. In *Ingraham v. Wright,* 1977, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711, the Supreme Court held that due process does not require public school teachers to afford students a hearing before administering corporal punishment. Reasoning that a requirement of such a prior hearing could disrupt the maintenance of discipline in the public schools, the Court determined that the benefit of advance procedural safeguards would be outweighed by their cost. *Id.* at 682, 97 S.Ct. at 1418. The Court therefore concluded that postdeprivation tort remedies "are fully adequate to afford due process". *Id.* at 672, 97 S.Ct. at 1413.

*Parratt* and *Hudson* are in line with *Ingraham.*[7] As *Ingraham* recognized, postdeprivation remedies may provide procedural due process when predeprivation process is too intrusive; *Parratt* recognized that postdeprivation remedies may provide procedural due process when predeprivation process is not practicable or feasible.

▮ The central question in determining the applicability of *Parratt,* therefore, is whether it is practicable for the state to provide a predeprivation hearing: "The controlling inquiry is solely whether the State is in a position to provide for predeprivation process". *Hudson,* ── U.S. at ──, 104 S.Ct. at 3204. Just as there is no reason to distinguish intentional from negligent deprivations, there is no reason to

7. In *Hudson* the Court noted that its decision was foreshadowed by *Parratt's* treatment of *Ingraham.* ── U.S. at ──, n. 4, 104 S.Ct. at 3204, n. 4. The plurality opinion in *Parratt* contains a lengthy and approving quotation from *Ingraham. See* 451 U.S. at 542–43, 101 S.Ct. at 1916, 1917. The plurality recognized that *Ingraham* involved facts more egregious than those before the *Parratt* Court, because *Ingraham* concerned an intentional deprivation of a liberty interest.

*See id.* 451 U.S. at 542, 101 S.Ct. at 1916. "It therefore seems clear that the majority in *Parratt* would apply [its] analysis to a case involving only negligent deprivation of a liberty interest." *Juncker v. Tinney,* D.Md.1982, 549 F.Supp. 574, 577 n. 1; *see also Daniels v. Williams,* 4 Cir.1983, 720 F.2d 792, 795; *Al-Mustafa Irshad v. Spann,* E.D.Va.1982, 543 F.Supp. 922, 927 n. 1; *Pantoja v. City of Gonzales,* N.D.Cal.1982, 538 F.Supp. 335, 339 n. 6.

differentiate between liberty interests and property interests:

"The logic of *Parratt* permits no principled distinction between deprivations of property and liberty interests. If a deprivation results from a 'random and unauthorized act' by a State official, the State is no more able to predict the deprivation, and a pre-deprivation hearing is no more possible, when the deprivation involves a liberty interest than when it involves a property interest. Therefore, if plaintiff has an adequate post-deprivation remedy in state court, that should satisfy the requirements of due process and plaintiff should not be permitted to bring a § 1983 claim in federal court."

*Juncker v. Tinney,* D.Md.1982, 549 F.Supp. 574, 576; *accord Daniels v. Williams,* 4 Cir.1983, 720 F.2d 792, 795; *Haygood v. Younger,* 9 Cir.1983, 718 F.2d 1472, 1479–80, *reh'g en banc granted,* Mar. 28, 1984; *Holmes v. Ward,* E.D.N.Y.1983, 566 F.Supp. 863, 865; *Al-Mustafa Irshad v. Spann,* E.D.Va.1982, 543 F.Supp. 922, 927 n. 1 (dicta).

■ A predeprivation hearing is not feasible with respect to a deprivation, either of property or of liberty, that is "random and unauthorized". The State could not have predicted that the defendant officials and city employees in the present case would perform their duties inadequately. In this case, as in *Parratt,* "[t]here is no contention that the procedures themselves are inadequate". 451 U.S. at 543, 101 S.Ct. at 1917. The defendants' alleged negligence was "random and unauthorized" action of the same sort involved in *Parratt.*[8] In such circumstances, the State cannot reasonably be expected to do more than

provide adequate postdeprivation remedies. If such remedies are available, a plaintiff deprived of liberty or property is not denied procedural due process.

Other courts facing similar factual situations have followed essentially the same reasoning to reach the same conclusion. In *Daniels v. Williams,* 4 Cir.1983, 720 F.2d 792, a prison inmate was injured when he slipped on a pillow negligently left on a set of stairs by a police deputy. The Court of Appeals held *Parratt* applicable. *Id.* at 796. In *Juncker v. Tinney,* D.Md.1982, 549 F.Supp. 574, a prison inmate burned himself on the radiator in his cell; he sued under section 1983, alleging a deprivation of liberty caused by the negligence of the prison officials in not providing covers for the radiators. The district court held *Parratt* applicable. *Id.* at 576, 579. *Haygood v. Younger,* 9 Cir.1983, 718 F.2d 1472, *reh'g en banc granted,* Mar. 28, 1984, presented a situation slightly different in nature, but much more detrimental to the plaintiff. In that case, negligence on the part of prison officials resulted in the plaintiff's remaining in prison several years past the completion of the plaintiff's sentence. The Court of Appeals held *Parratt* applicable. *Id.* at 1480. The holding in each of these three cases rests upon a thorough, well-reasoned analysis.

■ We are not persuaded by the two arguments that have been developed to oppose applying *Parratt* to cases involving negligent deprivations of a liberty interest. First, some courts have suggested that extending *Parratt* beyond its facts would effectively impose an exhaustion requirement in section 1983 actions, a result that the

---

**8.** In contrast, *Logan v. Zimmerman Brush Co.,* 1982, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265, involved a situation in which a property deprivation resulted from the operation of established state procedure. The Supreme Court held there that the availability of postdeprivation remedies was irrelevant to the question whether the deprivation occurred without due process of law. *Id.* at 435–36, 102 S.Ct. at 1157–58 (majority opinion of Blackmun, J.); *see also Parratt v. Taylor,* 451 U.S. at 546, 101 S.Ct. at 1918 (Blackmun, J., concurring). This holding is consistent with the *Parratt* analysis, for when

a deprivation occurs as a result of the established practice or procedure of a state agency, the result is predictable and the state has a constitutional duty to prevent it. *Pantoja v. City of Gonzales,* N.D.Cal.1982, 538 F.Supp. 335, 338. *Parratt* and *Logan* thus rest on a distinction between deprivations caused by established state procedures and deprivations caused by the individual misconduct of a state actor. *Hudson,* —— U.S. at ——, 104 S.Ct. at 3203; *Daniels v. Williams,* 4 Cir.1983, 720 F.2d 792, 795; *The Supreme Court, 1981 Term,* 96 Harv.L.Rev. 62, 101, 104 (1982).

Supreme Court has consistently rejected. *See Brewer v. Blackwell,* 5 Cir.1982, 692 F.2d 387, 394 n. 10; *Wakinekona v. Olim,* 9 Cir.1981, 664 F.2d 708, 715, *rev'd on other grounds,* 1983, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813. The exhaustion argument has been soundly criticized:

> "This objection amounts to a rejection of the reasoning of *Parratt;* it has no greater force with regard to a liberty interest than to a property interest. It misperceives *Parratt*'s import by confusing the rights accorded by the Fourteenth Amendment's due process clause with the remedy afforded by section 1983. *Parratt* did not deny Taylor a remedy; it defined his rights. The decision does not require that state remedies be exhausted. It held that no constitutional violation occurred. Resort to federal court in situations encompassed by its rationale is foreclosed. And for that matter, so is recourse to state courts on a section 1983 claim."

*Haygood v. Younger,* 718 F.2d at 1480 (citations omitted); *see also Daniels v. Williams,* 720 F.2d at 794 n. 1; *Bonner v. Coughlin,* 7 Cir.1975 (Stevens, J.), 517 F.2d 1311, 1320, *modified en banc,* 1976, 545 F.2d 565, *cert. denied,* 1978, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529; *Juncker v. Tinney,* 549 F.Supp. at 578. The exhaustion argument would have considerable force were it argued that *Parratt* applied to denials of *substantive* due process and equal protection rights. *See Augustine v. Doe,* 740 F.2d at 327. But when the right allegedly deprived is *procedural* due process, *Parratt* commands that the court evaluate the adequacy of the state's postdeprivation, as well as predeprivation, procedures. Those procedures may be inadequate, but they may not be ignored.

■ A second objection to extending *Parratt* to deprivations of liberty interests is that a postdeprivation damages remedy can never fully compensate for a loss of liberty. *See Ingraham v. Wright,* 430 U.S. at 701, 97 S.Ct. at 1427 (Stevens, J., dissenting); *Haygood v. Younger,* E.D.Cal.1981, 527 F.Supp. 808, 814, *rev'd,* 9 Cir.1983, 718 F.2d 1472, *reh'g en banc granted,* Mar. 28, 1984; Note, *Redefining the Parameters of Section 1983:* Parratt v. Taylor, 23 B.C.L. Rev. 1219, 1240, 1246 (1982). Although this argument has appeal, we feel compelled to reject it. Due process does not require perfect process. Monaghan, *Of "Liberty" and "Property",* 62 Cornell L.Rev. 405, 431–32 (1977). Nor does due process require complete compensation for injury, or even compensation equivalent to what would be available in a section 1983 action. *Hudson,* —— U.S. at ——, 104 S.Ct. at 3204; *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 1978, 439 U.S. 59, 88 & n. 32, 98 S.Ct. 2620, 2638 & n. 32, 57 L.Ed.2d 595; *Haygood v. Younger,* 718 F.2d at 1481; *Juncker v. Tinney,* 549 F.Supp. at 578; *see Parratt,* 451 U.S. at 543–44, 101 S.Ct. at 1916–17. It cannot be said *categorically* that a damages remedy is inadequate compensation for any deprivation of any liberty interest. An award of money is in a real sense a grant of liberty: The award enables the recipient to do things that he could not have done before. Thus, as the Supreme Court noted in *Bivens,* "[h]istorically damages have been regarded as the ordinary remedy for an invasion of personal interests in liberty". *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 1971, 403 U.S. 388, 395, 91 S.Ct. 1999, 2004, 29 L.Ed.2d 619. In any case, "[i]f the loss is 'incompensable', this is as much so under § 1983 as it would be under any other remedy", *Hudson,* —— U.S. at ——, 104 S.Ct. at 3204; postdeprivation damages awarded under section 1983 will be no more or less adequate than damages awarded under state law.[9]

---

9. As the particular liberty interest at stake increases in importance, the adequacy of a postdeprivation damages remedy may decrease. "At some point the individual interest will become so commanding and the risk of erroneous deprivation so high that the impossibility of the state['s] providing a prior hearing will not be a sufficient reason for allowing a postdeprivation remedy to satisfy procedural due process requirements." Note, *Redefining the Parameters of Section 1983:* Parratt v. Taylor, 23 B.C.L.Rev. 1219, 1247 (1982). At such a point, procedural

Because we hold that *Parratt* applies to deprivations of liberty, we must determine whether the postdeprivation state remedies that are available to Thibodeaux satisfy due process. *Hudson,* —— U.S. at ——, ——, 104 S.Ct. at 3203–04. Louisiana law affords the plaintiff a tort cause of action against all of the defendants in this suit. *See* La.Civ.Code Ann. arts. 2315–2317 (West 1979); La.Rev.Stat. Ann. § 42:1441(B) (West Supp.1984).[10] The availability of this remedy negates the plaintiff's assertion that the alleged negligence of the defendants deprived the plaintiff of liberty without due process of law. The complaint thus alleges no federal cause of action against the defendants, and the district court properly dismissed it.

### IV. *Conclusion*

Thibodeaux's complaint alleges no facts implying that the defendants deprived the plaintiff of any right under the United States Constitution. The defendant Dalbes Fontenot did not act under color of state law. The other defendants could not have deprived the plaintiff of any eighth amendment rights, because the plaintiff had not been convicted of a crime. The availability of adequate state tort remedies negates the plaintiff's contention that any injury he suffered through the negligence of these defendants was without due process of law. In short, the district court correctly dismissed the complaint.

We AFFIRM.

due process shades into substantive due process, and *Parratt* becomes inapplicable. Of course, the facts of the present case do not reach that point.

10. "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La.Civ.Code Ann. art. 2315 (West 1979).

"Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill." *Id.,* art. 2316.

"We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody." *Id.,* art. 2317.

"A. The state of Louisiana shall not be liable for any damage caused by a district attorney, coroner, assessor, sheriff, clerk of court, or public officer of a political subdivision within the course and scope of his official duties, or damage caused by an employee of a district attorney, coroner, assessor, sheriff, clerk of court, or public officer of a political subdivision.

"B. The provisions of Subsection A hereof are not intended to and shall not be construed to affect any personal liability which may arise from damage caused by any public officer of a political subdivision, or by a district attorney, coroner, assessor, sheriff, clerk of court, or the employee of any such public officer...." La. Rev.Stat.Ann. § 42:1441 (West Supp.1984).