**Gary D. OLSON, Appellant,**

v.

**Edward J. KLECKER; Joseph H. Havener; Winston Satran; Neal Fahlsing; Robert Coad; Gary Hornbacher; Gerald Hanson; Allan Voegele; Martin Edwardson, Appellees.**

**No. 80–1892.**

United States Court of Appeals,
Eighth Circuit.

Submitted March 5, 1981.

Decided March 11, 1981.

Gary Dean Olson, pro se.

Edwin F. Zuern, Sp. Asst. Atty. Gen., Bismarck, N. D., for appellees.

Before HEANEY, ROSS and ARNOLD, Circuit Judges.

PER CURIAM.

Gary Dean Olson, an inmate at the North Dakota State Penitentiary, filed a *pro se* 42 U.S.C. § 1983 action against various defendants [1] on June 8, 1979. Olson claims that a search of his cell outside his presence on March 22, 1979, was unconstitutional and further alleges that, during the cell search, personal legal materials were read by the person who conducted the search. The district court dismissed Olson's claims on September 9, 1980. We affirm.

1. *Propriety of the Search.*

Olson's prison tier was searched by students in a statewide jailor training course conducted at the North Dakota State Penitentiary. Thomas Paulson, a Ward County, North Dakota, employee and student in the jailor training program, conducted the actual search of Olson's cell. The tier search was preceded by an extensive training/orientation program. The students were lectured on proper cell-search methods and were directed to: (1) search the cells for contraband without being unnecessarily intrusive into the inmates' property; and (2) refrain from reading any prisoner mail in the cells.[2] The students were also shown a film that conveyed proper cell search technique. The student-conducted tier search was supervised at all times by Penitentiary employees Neal Fahlsing and Allan Voegele. The search exercise was given prior approval by the Warden's office and lasted approximately twenty to thirty minutes. We approve of the Penitentiary's efforts to ensure that the tier search was thorough without being unnecessarily intrusive.

■ Prisoners enjoy at least minimal fourth amendment protection in cell-search situations. *See, e. g., Bonner v. Coughlin,* 517 F.2d 1311, 1314–1317 (7th Cir. 1975), *aff'd on rehearing,* 545 F.2d 565 (7th Cir.

---

1. Specifically, the named defendants included various employees of the North Dakota State Penitentiary and two Cass County, North Dakota, employees. The two Cass County employees were properly dismissed by the district court prior to trial because discovery revealed that they did not participate in the actions that gave rise to Olson's suit.

2. The defendant-appellees inform this Court that the "nationally accepted policy of only inspecting and not reading an inmate's mail during a cell search was stressed throughout the class lecture and film." Moreover, the appellees assert that the North Dakota State Penitentiary practice, which is the same as the national policy, was "also pointed out to the class." The appellees inform us that the long-standing policy of the Penitentiary is not to read prisoners' mail during a cell search.

1976) (en banc),[3] *cert. denied*, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed. 529 (1978). However, prisoners do not retain the same measure of protection afforded nonincarcerated individuals. *United States v. Stumes*, 549 F.2d 831, 832 (8th Cir. 1977) (per curiam). The prisoners' reduced measure of fourth amendment protection stems from legitimate institutional needs as well as prisoners' diminished expectations of privacy. *Id.*

The Supreme Court, in a pretrial detainee context, recently upheld a prison practice of unannounced searches of inmate living areas at irregular intervals. *Bell v. Wolfish*, 441 U.S. 520, 555–557, 99 S.Ct. 1861, 1882, 60 L.Ed.2d 447 (1979). The searches in *Bell*, like the search presently challenged, generally involved formal unit "shakedowns" during which all inmates "were cleared of the residential units, * * * [after which] a team of guards search[ed] each room." *Id.* at 555, 99 S.Ct. at 1882. The Court recognized that it might well be argued that a pretrial detainee has no reasonable expectation of privacy with respect to his room or cell and that, therefore, the fourth amendment provides no protection for such person. *Id.* at 556–557, 99 S.Ct. at 1883. The Court continued:

> In any case, given the realities of institutional confinement, any reasonable expectation of privacy that a detainee retained necessarily would be of a diminished scope. Assuming, *arguendo*, that a pretrial detainee retains such a diminished expectation of privacy after commitment to a custodial facility, we nonetheless find that the room-search rule does not violate the Fourth Amendment.
>
> It is difficult to see how the detainee's interest in privacy is infringed by the room-search rule. *No one can rationally doubt that room searches represent an appropriate security measure and neither the District Court nor the Court of Appeals prohibited such searches. And even the most zealous advocate of prisoners' rights would not suggest that a warrant is required to conduct such a search.* Detainees' drawers, beds, and personal items may be searched, even after the lower courts' rulings. *Permitting detainees to observe the searches does not lessen the invasion of their privacy; its only conceivable beneficial effect would be to prevent theft or misuse by those conducting the search. The room-search rule simply facilitates the safe and effective performance of the search which all concede may be conducted. The rule itself, then, does not render the searches "unreasonable" within the meaning of the Fourth Amendment.*

*Id.* at 557 (citation and footnote omitted) (emphasis added).[4]

■ It is clear that the March 22, 1979, search of Olson's cell was constitutional under *Bell v. Wolfish* and *United States v. Stumes*: (1) random, irregular cell searches in the North Dakota State Penitentiary were conducted for valid security reasons; and (2) as will be subsequently discussed, the actual search of Olson's cell was not unnecessarily intrusive. Moreover, *Bell* effectively forecloses Olson's claim that prisoners must be present when their cells are searched so as to discourage abuses by prison guards during the search.

### 2. *Conduct of the Search.*

■ Thomas Paulson, the Ward County, North Dakota, employee who searched Olson's cell, testified that (1) he was the only person in Olson's cell during the search; (2)

---

3. The en banc decision only considered whether the prisoner could recover damages under 42 U.S.C. § 1983 for the loss of a copy of his trial transcript which allegedly occurred because Illinois prison guards had negligently left his cell door open after a security search. *Bonner v. Coughlin*, 545 F.2d 565, 566 (7th Cir. 1976) (en banc). The panel's judgment on other issues was affirmed. *Id.* at 569 n.9.

4. The Court recognized that it was possible that institution guards might not treat inmates' personal possessions with "appropriate respect." *Bell v. Wolfish*, 441 U.S. 520, 557 n.38, 99 S.Ct. 1861, 1883, n.38, 60 L.Ed.2d 447 (1979). The Court noted, however, that the case before it presented no question of whether there had been "abuses of trust" by the guards. *Id.*

he did not knowingly disturb Olson's mail, but may have "bumped" it during the course of the search; and (3) he positively did not read any mail in Olson's cell. Olson testified at trial that upon return to his cell after the search, his mail was "strewn" about his cell. As a result of this observation, Olson apparently assumed that his mail must have been read. The district court credited Paulson's testimony over Olson's and held that Olson's mail had not been read. We cannot say that the district court's factual finding is clearly erroneous. See Fed.R.Civ.P. 52(a).

We recognize that a prisoner who is absent from the scene may be precluded, as a practical matter, from proving that a guard read mail in his cell during a search. However, the North Dakota State Penitentiary has a formal policy that guards are not to read prisoner mail in cells. See note 2, *supra*. We encourage prison officials to carefully adhere to that policy. Cell searches for contraband can ordinarily be effected with physical mail inspection without reading the contents, and prison officials must maintain institutional security without being unnecessarily intrusive into inmate possessions.[5] On this record, we have no reason to believe that the March 22, 1979, search of Olson's cell was unnecessarily intrusive.

The district court's dismissal is affirmed.

---

5. Of course, incoming prisoner mail is initially inspected for contraband and presents a different security problem than presumably "already inspected prisoner mail" which is kept in cells.

North Dakota State Penitentiary officials properly recognize that difference and, as noted earlier, require that mail in cells is ordinarily *not* to be read.