Russell Thomas PALMER, Jr., Appellant,

v.

Ted S. HUDSON, Officer, Appellee.

No. 81–6967.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 5, 1982.
Decided Jan. 6, 1983.

---

Deborah C. Wyatt, Charlottesville, Va. (Wyatt & Rosenfield, Charlottesville, Va., on brief), for appellant.

Alan Katz, Asst. Atty. Gen., Richmond, Va. (Gerald L. Baliles, Atty. Gen. of Richmond, Va., on brief), for appellee.

Before WINTER, Chief Judge, and PHILLIPS and MURNAGHAN, Circuit Judges.

HARRISON L. WINTER, Chief Judge.

Russell T. Palmer, Jr., an inmate of the Bland Correctional Center in Virginia, brought this § 1983 action against Ted S. Hudson, an officer of that facility, alleging, among other things, that Officer Hudson destroyed his property, in a nonroutine shakedown search.[1] The district court granted defendant's motion for summary

---

1. Palmer's other claims are without merit and may be disposed of summarily. The district judge properly reasoned that defendant's actions do not constitute cruel and unusual punishment and that the procedures accorded to Palmer in the disciplinary proceedings suffice under the standard of *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). The claim that defendant destroyed legal materials during the search of his locker, and so infringed his right of access to the courts, is meritless since there is no indication that Officer Hudson's acts were in retaliation for Palmer's legal activities, cf. *Russell v. Oliver*, 552 F.2d 115 (4 Cir.1977), nor any indication that other avenues for seeking legal relief were unavailable to Palmer. *Cf. Williams v. Leeke*, 584 F.2d 1336 (4 Cir.1978).

judgment, reasoning that under *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the intentional destruction of a prisoner's property is not a violation of due process, when the prisoner has an adequate remedy under state law. The district court also ruled that, accepting Palmer's allegations of harassment as true, it could not conclude that the allegations were of constitutional significance. We agree that under *Parratt* due process is not violated when a state official intentionally deprives an individual of his property by a random and unauthorized act if the state provides an adequate postdeprivation remedy. However, we reverse and remand for further proceedings on Palmer's claim that the alleged nonroutine shakedown of his property by Officer Hudson was an unconstitutional search in violation of his Fourteenth Amendment right to privacy.

### A.

■ In *Parratt* the Supreme Court held that the negligent loss of a prisoner's property by a prison official was not a due process violation when the state provided an adequate postdeprivation remedy. *Parratt's* scope cannot easily be limited to negligent deprivations of property. For, if the

underlying principle is, as Justice Rehnquist stated in a plurality opinion, that when no practical way to provide a predeprivation hearing exists, a postdeprivation hearing will satisfy the dictates of procedural due process, then it as well applies to an intentional deprivation for which meaningful prior review was impractical. *Accord Engblom v. Carey,* 677 F.2d 957 (2 Cir.1982); *Rutledge v. Arizona Bd. of Regents,* 660 F.2d 1345, 1352 (9 Cir.1981), *cert. granted,* sub nom. *Kush v. Rutledge,* 102 S.Ct. 3508, 73 L.Ed.2d 1382 (1982).[2]

Nor do we read any of the separate opinions in *Parratt* to give any persuasive basis on which to conclude that its holding does not encompass an intentional tort. It is true that four justices stated that they would limit *Parratt's* scope to negligent acts, but no persuasive rationale was provided for doing so. Justice Blackmun, with whom Justice White concurred, agreed with the plurality that the impracticality of predeprivation review and the existence of a postdeprivation remedy was relevant to determining if an action violated due process. However, he suggested that the existence of a state tort remedy should not suffice to cure the unconstitutional nature of a state official's intentional act, since an intentional act would rarely be amenable to prior

---

**2.** *See also Gilday v. Boone,* 657 F.2d 1, 2 n. 1 (1 Cir.1981); *Waterstraat v. Central State Hospital,* 533 F.Supp. 274 (W.D.Va.1982); *Sheppard v. Moore,* 514 F.Supp. 1372 (M.D.N.C.1981). Several courts have stated that *Parratt* should not extend to intentional acts. *Weiss v. Lehman,* 676 F.2d 1320, 23 (9 Cir.1982); *Yusuf Asad Madyun v. Thompson,* 657 F.2d 868, 873 (7 Cir.1981); *Schiller v. Strangis,* 540 F.Supp. 605 (D.Mass.1982); *Howse v. DeBerry Correctional Inst.,* 537 F.Supp. 1177 (M.D.Tenn.1982); *McCowen v. City of Evanston,* 534 F.Supp. 243, 49 (N.D.Ill.1982); *Peters v. Township of Hopewell,* 534 F.Supp. 1324 (D.N.J.1982); *Tarkowski v. Hoogasion,* 532 F.Supp. 791, 794–95 (N.D.Ill.1982); *Parker v. Rockefeller,* 521 F.Supp. 1013, 16 (N.D.W.Va.1981).

A common argument for so limiting *Parratt* is that extending its scope to intentional acts drastically undercuts the use of § 1983 as a check on wrongdoing by state officials, its congressionally intended purpose. *Howse v. DeBerry Correction Inst., supra; Tarkowski v. Hoogasion, supra; Parker v. Rockefeller, supra.* However, § 1983 is not a remedy for every wrong committed by state officials, it is only a

remedy for those wrongs which are of a constitutional dimension or which violate a federal statute. *Parratt,* of course, did not restrict the availability of § 1983 as a remedy for constitutional wrongs. Instead, it held the constitutional requirement of procedural due process to be satisfied if the state provides a post facto remedy for an injury inflicted by an official which was not done pursuant to an established policy and was not amenable to prior control. *Parratt* does not impinge upon the right to a § 1983 remedy for an officially inflicted injury done pursuant to an established procedure, which remains a violation of the requirement of procedural due process, *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 434–437, 102 S.Ct. 1148, 1157–58, 71 L.Ed.2d 265 (1982), or for an official act which violates a substantive constitutional right, such as the right to vote, *Duncan v. Poythress,* 657 F.2d 691, 704–5 (5 Cir.1981), or for an official act which is sufficiently egregious to amount to a violation of the requirement of substantive due process, *Schiller v. Strangis,* 540 F.Supp. 605, 613–15 (D.Mass. 1982).

review and since a state tribunal would be unlikely to provide due process when reviewing the deliberate conduct of the state's employees. 451 U.S. at 545–546, 101 S.Ct. at 1918. Neither rationale for limiting *Parratt's* scope obtains here for there is no practical mechanism by which Virginia could prevent its guards from conducting personal vendettas against prisoners other than by punishing them after the fact, nor have we been given any cause to believe that Virginia courts would be less diligent in protecting prisoners from intentionally inflicted injuries than in protecting them from negligently inflicted injuries.

Justice Marshall intimated that he would limit *Parratt's* scope to negligent deprivations, but he, too, suggested no rationale for the distinction that he was prepared to recognize. 451 U.S. at 555, 101 S.Ct. at 1923. Justice Powell would limit *Parratt* to nonintentional takings by making intent an essential element of a due process claim on the theory that "deprivation" as used in § 1983 "connotes an intentional act ... or, at the very least, a deliberate decision not to act to prevent a loss." 451 U.S. at 547–548, 101 S.Ct. at 1919. However, every other member of the court agreed that a negligent deprivation of property was a due process violation, and that the proper inquiry was whether a postdeprivation remedy could cure the constitutional wrong. As we state above, once it is assumed that a postdeprivation remedy can cure an unintentional but negligent act causing injury, inflicted by a state agent which is unamenable to prior review, then that principle applies as well to random and unauthorized intentional acts.

We therefore conclude that plaintiff has no meritorious cause of action under § 1983 for the allegedly intentional destruction of his property.

### B.

We conclude, however, that the district court's entering summary judgment for defendant with regard to an unreasonable search of his property was premature. In his verified complaint plaintiff alleged that "officer Hudson shook down my locker and destroyed ... my property ... as a means of harassment .... The shakedown was no routine shakedown. It was planned and carried out only as harassment." In moving for summary judgment, defendant filed his affidavit asserting that he and Officer Lephew conducted "a routine search of [plaintiff's] locker" and that "it was merely a routine search for contraband." Plaintiff responded with a counteraffidavit reasserting that he "knows and believes that the shakedown of Sept. 16, 1981 was not a routine shakedown, but only a form of harassment by [defendant]."

Thus the record reflects a sharp factual conflict as to whether the search was routine or whether it was conducted solely for purposes of harassment. Summary judgment was therefore precluded, Rule 56 F.R. Civ.P., unless it can be concluded that Palmer had no privacy interest in the locker. While we have never considered this issue, numerous other courts have held that prisoners have a limited privacy interest and should be free from unreasonable searches and unjustifiable confiscations.[3] *United States v. Hinckley,* 672 F.2d 115,

---

**3.** In *Lanza v. New York,* 370 U.S. 139, 142–43, 82 S.Ct. 1218, 1220, 8 L.Ed.2d 384 (1962), the Court intimated that Fourth Amendment protections would not extend to a prison cell. The continuing validity of this reasoning is doubtful, for in *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the Court rejected the "constitutionally protected area" test upon which the *Lanza* dicta was based. In *United States v. Edwards,* 415 U.S. 800, 808 n. 9, 94 S.Ct. 1234, 1239 n. 9, 39 L.Ed.2d 771 (1974), the Court expressly left open the question whether prisoners possessed privacy rights. In *Wolff v. McDonnell,* 418 U.S. 539,

555–56, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974), it stated that, as a general rule, prisoners should be accorded those constitutional rights which are not inimical to prison administration or security. In *Bell v. Wolfish,* 441 U.S. 520, 555–60, 99 S.Ct. 1861, 1882–85, 60 L.Ed.2d 447 (1979), the Court again expressly refused to address the question of whether prisoners possessed any privacy rights, merely holding that whatever rights they retained were limited, and not violated by cell block shakedowns, or body cavity searches conducted after prisoner contact with outsiders.

129–32 (D.C.Cir.1982); *United States v. Lilly,* 576 F.2d 1240, 1244–47 (5 Cir.1978); *United States v. Stumes,* 549 F.2d 831, 32 (8 Cir.1977); *Sostre v. Preiser,* 519 F.2d 763, 764–65 (2 Cir.1975); *Bonner v. Coughlin,* 517 F.2d 1311, 1315–17 (7 Cir.1975), *aff'd on rehearing,* 545 F.2d 565 (1976) (in banc), *cert. denied,* 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978). *United States v. Savage,* 482 F.2d 1371, 1372 (9 Cir.1973); *Daughtery v. Harris,* 476 F.2d 292, 294 (10 Cir.), *cert. denied,* 414 U.S. 872, 94 S.Ct. 112, 38 L.Ed.2d 91 (1973). *But see United States v. Hitchcock,* 467 F.2d 1107 (9 Cir. 1972), *cert. denied,* 410 U.S. 916, 93 S.Ct. 973, 35 L.Ed.2d 279 (1973).

■ In defining privacy rights in prison we are guided by the general principle that prisoners should be stripped of only those constitutional rights which would impair prison security or administration. *Cf. Wolff v. McDonnell,* 418 U.S. 539, 555–56, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974). However, this is not to say that prisoners have the same privacy interests as those not in prison. Because of the legitimate demands of prison security, and to a lesser extent a prisoner's diminished expectation of privacy,[4] neither a warrant nor probable cause is a prerequisite to a search or seizure in prison. *See, e.g., United States v. Lilly,* 576 F.2d at 1244; *United States v. Stumes,* 549 F.2d at 832; *Bonner v. Coughlin,* 517 F.2d at 1317. Irregular, unannounced shakedown searches of prisoner property are permissible, for they are an effective means of ensuring that prisoners do not possess contraband. *Bell v. Wolfish,* 441 U.S. 520, 555–57, 99 S.Ct. 1861, 1882–83, 60 L.Ed.2d 447 (1979); *Olson v. Klecker,* 642 F.2d 1115 (8 Cir.1981). Shakedown searches of single individuals are troubling, however, for there is an ever present danger that the search was motivated by a guard's personal desire to harass or humiliate the inmate, and not by legitimate institutional concerns. *See* Wayne R. LaFave, 3 Search & Seizure § 10.9 (1978). Needless to say, a primary purpose of the Fourth and Fourteenth Amendments is to protect individuals from such arbitrary and oppressive invasions of personal security. *Delaware v. Prouse,* 440 U.S. 648, 653–54, 99 S.Ct. 1391, 1395–96, 59 L.Ed.2d 660 (1979).

■ But individual shakedown searches, such as that here, may legitimately be grounded upon either a prison policy of conducting random searches of single cells or blocks of cells to deter or discover the possession of contraband, or upon the existence of some reasonable basis for a belief that the prisoner possesses contraband. We recognize that allowing the prison authorities to adopt a program of random individual searches may provide an increased opportunity for prison officials to abuse that power and utilize searches as a means of harassment; however, the device is of such obvious utility in achieving the goal of prison security that we do not think that the risk outweighs the benefit.[5] Prisoners will be accorded some protection from abusive searches by requiring prison authorities, if the validity of the search is questioned, to prove that adequate grounds existed to justify the search. *Cf. United States v. Lilly,* 576 F.2d at 1245. When the search is a shakedown of a particular prisoner's property, this may be done in one of two ways: either by proving that the search was done pursuant to an established program of conducting random searches of single cells or groups of cells reasonably designed to deter or discover the possession of contraband, *cf. United States v. Ready,* 574 F.2d 1009, 1014 (10 Cir.1978) (search permissible without specific cause when done pursuant to routine reasonably de-

---

**4.** Denying prisoner privacy rights merely because of the absence of an expectation of privacy is circular reasoning. Prisoners will come to expect that level of privacy which is accorded to them. Giannelli & Gilligan "Prison Searches and Seizures: 'Locking' The Fourth Amendment Out of Correctional Facilities", 62 Va.L. Rev. 1045, 1058–63 (1976).

**5.** Some justification for an absolute prohibition of individual shakedown searches can be found in *Delaware v. Prouse, supra,* where the Supreme Court invalidated a state program of conducting random spot checks of automobiles, in part because of the inherent danger of arbitrary conduct by the police, despite the admitted utility of such a practice.

signed to promote institutional security); or, by proving that some reasonable basis existed for the belief that the prisoner possessed contraband. In assessing the validity of a proffered justification for a search, a court should, of course, consider direct proof offered by the plaintiff that the search was impermissibly motivated, by a desire to harass or humiliate him, such as evidence of other acts of harassment by the defendant.

█ If the defendant is unable to establish that the search was permissibly motivated and conducted in a reasonable manner, then the plaintiff is entitled to at least nominal damages. In an appropriate case where his injury is greater, he may be entitled to both actual and punitive damages. *See United States v. Calandra,* 414 U.S. 338, 354 n. 10, 94 S.Ct. 613, 623 n. 10, 38 L.Ed.2d 561 (1974); *Baskin v. Parker,* 588 F.2d 965 (5 Cir.1979); *O'Connor v. Keller,* 510 F.Supp. 1359 (D.Md.1981). *Parratt v. Taylor* does not trench upon the right to a § 1983 remedy for an unreasonable search, for the right violated is the substantive right to privacy and not a right to procedural due process. *See Parratt v. Taylor,* 451 U.S. at 534–6, 101 S.Ct. at 1912–13 [distinguishing *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)].

Because we conclude that Palmer had a limited privacy right which may have been violated, we reverse the district court's judgment as to this claim and remand for an evidentiary determination.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.