478 So.2d 659 (1985)
STATE of Louisiana, Appellee,
v.
Jerry DUNN, Jr., Appellant.
No. 17328-KA.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1985.
*660 David M. Newell, Indigent Defender, Homer, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, John C. Blake, Dist. Atty., Jonesboro, John M. Ruddick, Asst. Dist. Atty., Haynesville, for appellee.
Before MARVIN, JASPER E. JONES and NORRIS, JJ.
NORRIS, Judge.
The defendant, Jerry Dunn, Jr., was charged with two counts of introduction of contraband into a parish jail, LSA-R.S. 14:402 C,[1] and one count of middle grade theft, LSA-R.S. 14:67. He filed a motion to suppress, which the trial court took under advisement. At a preliminary examination, the trial court found probable cause to bind the defendant on all three counts. It then denied the motion to suppress. Subsequently, the defendant pled guilty to one count of introduction of contraband in exchange for the state dropping all other charges. The defendant reserved his right to appeal the ruling on the motion to suppress. See State v. Crosby, 338 So.2d 584 (La.1976). The trial court sentenced Dunn to two years at hard labor, to run consecutively to any other sentence. Defendant now appeals, asserting only that the trial court erred in denying his motion to suppress. We affirm.

FACTS
On December 18 and 19, 1984, the defendant was an inmate in the Claiborne *661 Parish Jail.[2] On the night of December 18 or the early morning of December 19, another inmate in the cellblock complained that he was missing a one hundred dollar bill. Dep. Don Ceccarelli reported for duty that morning at about 8:00 a.m. and was informed of the report of the missing money.
The deputy waited until the inmates had been served breakfast and then collected all the outgoing mail from the cellblock. The entire post consisted of two letters from the defendant. The deputy inspected both pieces in his office; one letter, addressed to the defendant's wife Veronica Dunn, contained a one hundred dollar bill. The letter accompanying it detailed a plan to smuggle marijuana into the jail; apparently the money was earmarked for the drug purchase.
After consulting the D.A.'s office, the deputy retained the one hundred dollar bill, replaced it with another, sealed the envelope and mailed it. The plan outlined in the letter was to be implemented on Sunday, December 23. At the appropriate time, Claiborne Parish deputies were in position to frustrate the smuggling scheme.
On December 23, during visiting hours, Veronica Dunn arrived at the jail with a paper sack. While she met with the defendant, the deputies inspected the sack and found its contents to correspond to the instructions of the intercepted letter. Specifically, it contained a plastic container full of baby powder, with a small plastic sack of marijuana hidden inside. The defendant's letter had instructed Veronica Dunn to conceal the contraband in precisely this manner.

DISCUSSION
In his one assignment of error, Dunn claims the prison official violated his right against unreasonable searches and seizures by opening his sealed letter. U.S.C.A.-Const. amds. 4, 14; LSA-Const. art. 1 § 5.[3] Without much elaboration, he contends that the seizure without a warrant was per se illegal and that under the circumstances there was no probable cause for a warrant to issue.
In the recent case of Hudson v. Palmer, ___ U.S. ___, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the United States Supreme Court was confronted with the question of whether a prison inmate had any reasonable expectation of privacy in his prison cell, entitling him to the fourth amendment's protection against unreasonable searches and seizures. The Fourth Circuit Court of Appeals had held that an inmate has a "limited privacy right" within his cell, entitling him to protection against searches and seizures that are conducted solely to harass or humiliate. 697 F.2d 1220.
The Supreme Court flatly concluded that an inmate has no reasonable expectation of privacy inside his cell. The court's analysis began with the recognition that prisoners are not automatically deprived of constitutional protections. The court cited the religious freedom of the first amendment, as outlined in Cruz v. Beto, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (per curiam), and the freedom from cruel and unusual punishment of the eighth amendment, as outlined in Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), among others.
The court explained, however, that prisoners necessarily lose many protections of the constitution.

*662 These constraints on inmates, and in some cases a complete withdrawal of certain rights, are "justified by the considerations underlying our penal system." Price v. Johnston, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948); see also Bell v. Wolfish, supra, 441 U.S. [520], at 545-546, 99 S.Ct. [1861], at 1877-1878 [60 L.Ed.2d 447 (1979).] and cases cited; Wolff v. McDonnell, supra, 418 U.S. [539], at 555, 94 S.Ct. [296] at 2974 [41 L.Ed.2d 935 (1974).]. The curtailment of certain rights is necessary, as a practical matter, to accommodate a myriad of "institutional needs and objectives" of prison facilities, Wolff v. McDonnell, supra, at 555, 94 S.Ct. at 2974, chief among which is internal security, see Pell v. Procunier, 417 U.S. 817, 823, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). Of course, these restrictions or retractions also serve, incidentally, as reminders that, under our system of justice, deterrence and retribution are factors in addition to correction. ___ U.S. at ___, 104 S.Ct. at 3198-99, 82 L.Ed.2d at 401-402.
The court proceeded to analyze the fourth amendment rights alongside the paramount governmental and societal interests at stake in the maintenance of prisons.
The applicability of the Fourth Amendment turns on whether "the person invoking its protection can claim a `justifiable,' a `reasonable,' or a `legitimate expectation of privacy' that has been invaded by government action." Smith v. Maryland, 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979), and cases cited. We must decide, in Justice Harlan's words, whether a prisoner's expectation of privacy in his prison cell is the kind of expectation that "society is prepared to recognize as `reasonable.'" Katz, supra, 389 U.S., [347] at 360, 361, 88 S.Ct. [507], at 516, 517 [19 L.Ed.2d 576 (1967).] (concurring opinion).
Notwithstanding our caution in approaching claims that the Fourth Amendment is inapplicable in a given context, we hold that society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell. The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions.
Prisons, by definition, are places of involuntary confinement of persons who have a demonstrated proclivity for antisocial criminal, and often violent, conduct.
* * * * * *
Within this volatile "community," prison administrators ... must be ever alert to attempts to introduce drugs and other contraband into the premises which, we can judicially notice, is one of the most perplexing problems of prisons today; they must prevent, so far as possible, the flow of illicit weapons into the prison; they must be vigilant to detect escape plots, in which drugs or weapons may be involved, before the schemes materialize.
* * * * * *
[A] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order. We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered a paramount interest in institutional security. We believe that it is accepted by our society that "[l]oss of freedom of choice and privacy are inherent incidents of confinement." Bell v. Wolfish, 441 U.S., at 537, 99 S.Ct., at 1873. ___ U.S. at ___, 104 S.Ct. at 3198-3201, 82 L.Ed.2d at 400-404 (footnotes omitted)
The Supreme Court approved random searches of inmates, individually or collectively, and of their cells and lockers, as valid and necessary to the effective security of penal institutions. The court specifically rejected the argument that searches *663 must be conducted only pursuant to an enunciated general policy or when suspicion is directed at a particular inmate.
We conclude that the rationale of Hudson v. Palmer is equally applicable to the instant case. The sending of mail that plots to introduce contraband into the prison subverts the same governmental interests that are protected in Hudson. The inspection and opening of mail is of obvious utility in protecting those interests. The warrantless search, therefore, was valid.
We are cognizant of earlier federal decisions which found a limited right of privacy in inmate letters. See Palmigiano v. Travisono, 317 F.Supp. 776 (D.R.I.1970); United States v. Savage, 482 F.2d 1371 (9th Cir.1973). We feel, however, that the Supreme Court's announcement of valid government policies and procedures in Hudson is sufficient to justify us in abandoning these cases. We are also cognizant of the considerable jurisprudence holding that inmate mail may be censored for the furtherance of a substantial government interest such as security or discipline. See Frazier v. Donelon, 381 F.Supp. 911 (E.D. La.1974); Guajardo v. Estelle, 580 F.2d 748 (5th Cir.1978). We feel that if complete censorship is permissible, then the lesser included act of opening the mail and reading it is also permissible. See Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); Feeley v. Sampson, 570 F.2d 364 (1st Cir.1978).
Even if we were to extend to this defendant a greater right of privacy in his letter than he has in his cell, we would be able to find that the circumstances leading to the search created a reasonable suspicion directed at the prisoner, Dunn. A theft was alleged. Theft is a crime, even within prison walls, LSA-R.S. 14:67; possession of a $100 bill by an inmate is a crime, LSA-R.S. 14:402 C; and large amounts of cash are virtually useless unless they can be sent outside the prison walls. The most expedient way to transfer the stolen $100 bill beyond prison walls was through outgoing mail. Thus, the reported theft and the accusation of Dunn as thief served to create the reasonable suspicion. Proper prison discipline and security calls for prompt action when prison authorities have reason to believe a crime has been committed within the jail. The action taken in opening the first outgoing mail after the theft was reported was certainly not an unreasonable limitation of defendant's fourth amendment rights. It was certainly pursuant to valid governmental objectives. No search warrant was necessary.
We note that under similar circumstances, the Pennsylvania Superior Court held that an allegation of theft of $500 was sufficient to create a reasonable suspicion and justified a warrantless search of all the inmates in a large cell. Commonwealth v. Wallington, 238 Pa.Super. 427, 357 A.2d 598 (1976).
We hold that defendant had no right of privacy under the fourth amendment of the United States Constitution or under Article I, § 5 of the Louisiana Constitution in his outgoing mail. Such mail was subject to inspection or perusal to maintain the identifiable governmental interest of prison discipline and security. Defendant's assignment of error lacks merit. His conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] LSA-R.S. 14:402 C provides, in pertinent part:

It shall be unlawful to possess or to introduce or attempt to introduce into or upon the premises of any municipal or parish prison or jail or to take or attempt to take or send therefrom any of the following articles which are hereby declared to be contraband for the purpose of this Section, to wit: any currency or coin which is legal tender,
* * * * * *
any narcotic or hypnotic or excitive drug or any drugs or whatever kind or nature, including nasal inhalators of any variety, sleeping pills or barbiturates of any variety that create or may create a hypnotic effect if taken internally, or any other controlled dangerous substance as defined in R.S. 40:961, et seq.;
* * * * * *
Whoever violates any provision of this Subsection shall be imprisoned with or without hard labor for not more than five years.
[2] The record does not disclose whether Dunn was serving time on a conviction or was merely a pre-trial detainee.
[3] LSA-Const. art. 1 § 5 provides:

Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court.