LOTTINGER, Judge.
This lawsuit involves the constitutional right of a state prisoner not to have his outgoing “legal” mail opened during a security shakedown. The commissioner recommended a directed verdict for defendants, former Warden Ross Magio, Jr. and Lt. Kenneth Roy, and that suit against the remaining defendants be dismissed with prejudice at plaintiff's costs. From the trial court’s adoption of the commissioner’s recommendation, plaintiff appeals.
FACTS
At about 12:15 p.m., October 20, 1983, a “shakedown” was conducted in plaintiff’s dorm at Angola State Penitentiary and Lt. R. Mitchell ordered prisoners to leave the dorm. Plaintiff, in his brief, asserted prisoners were told to take anything they needed because they would not be returning to the dorm. The defendants, however, testified prisoners were told not to take anything with them. Plaintiff took a sealed white envelope with him and when asked to open it, refused, claiming it was “legal” mail because it was addressed to the Third Circuit Court of Appeal, and thus defendants had no right to inspect the contents. He also allegedly invited Sgt. Mike Roberts to accompany him to the mailbox and watch him mail it. Roberts refused and ushered plaintiff to a booth where he called Colonel Wall for instructions regarding the sealed envelope. Wall advised him to open it. After not finding any contraband in the envelope, Roberts returned the unread contents and envelope to plaintiff and offered to give him a new envelope. Defendants testified they could not recall if the envelope was addressed to the Third Circuit Court of Appeal in Lake Charles as alleged by plaintiff or even if it was addressed at all. An envelope with the Third Circuit Court of Appeal’s address on it was introduced into evidence. A letter from former Warden Ross Maggio, Jr. was also introduced into evidence. Maggio’s letter stated plaintiff was holding a plain white envelope “containing an address relating to legal matters_ Contraband was suspected; therefore you were ordered to open the envelope but refused. Officer Roberts was instructed to open the envelope for security reasons.”
TRIAL COURT
A commissioner of the 19th Judicial District Court recommended judgment in favor of Roberts, Mitchell and Wall and that defendants’ motion for a directed verdict be granted as to Maggio and Roy. The trial court adopted the commissioner’s recommendations without giving reasons different from those of the commissioner. The commissioner accepted as true the plaintiff’s assertion that the envelope was in fact addressed to the Third Circuit Court of Appeal, but he chose to believe defendants’ testimony that prisoners were told not to *215 take anything with them. By violating this command, the commissioner concluded, plaintiff aroused security concerns, and thus justified the opening of the envelope.
The commissioner distinguished this case from those in which the United States Courts of Appeal accorded special protection to “legal” mail. Those cases, stated the commissioner, involved wholesale, routine inspection of outgoing, legal mail. In contrast, this case dealt with a specific incident that provoked suspicion. The commissioner relied on State v. Dunn, 478 So.2d 659 (La.App. 2d Cir.1985), which allowed the opening of personal mail following a reported theft of a $100 bill. The Dunn court cited the need to protect government interests in prison security and discipline. It also followed Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), which held a prisoner has no reasonable expectation of privacy in his cell. Hence, the commissioner decided the exigency of the circumstances and the state’s interests in prison security outweighed plaintiffs interest in not having his “legal” mail opened, but not read.
ASSIGNMENTS OF ERROR
In appealing the plaintiff assigned errors from which we have gleaned the following:
1. The trial court erred in finding defendants did not violate plaintiffs constitutionally protected rights of access to the courts when they ordered plaintiffs “legal” mail opened during a prison dorm shakedown;
2. The trial court erred in not awarding plaintiff compensatory, as well as punitive damages; and
3. The trial court erred in finding plaintiff did not meet his burden of proof.
ASSIGNMENT OF ERROR NO. 1
Plaintiff contends the trial court erred by not finding defendants interfered with plaintiffs constitutionally protected right of access to the courts.
Plaintiff cites Guajardo v. Estelle, 580 F.2d 748 (5th Cir.1978) as supporting the proposition that prison officials have no justifiable reason to open prisoners outgoing “legal” mail. Prison security is not jeopardized, the court opined, because it is presumed recipients of such mail (attorneys and judges) know what to do if they find contraband among the contents. The court, however, was not faced, as was the court here, with a shakedown during which a prisoner attempted to walk out with a sealed envelope after prison officials instructed prisoners not to take anything with them.
Plaintiff also cites Frazier v. Donelon, 381 F.Supp. 911 (E.D.La.1974), affirmed, 520 F.2d 941, cert, denied, 424 U.S. 923, 96 S.Ct. 1134, 47 L.Ed.2d 332 (1976) to support his contention that outgoing mail to the courts should not be opened. Once again, that case dealt with a general attack of prison regulations. Prison officials were opening, reading, and censoring all correspondence. It did not concern a specific risk to security as presented here.
Plaintiff further cites Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed. 935 (1974) as giving special treatment to “legal” mail. That case is not applicable for it concerned mail from attorneys and whether such mail must be delivered unopened if normal detection techniques fail to indicate contraband.
Taylor v. Sterrett, 532 F.2d 462 at 474 (5th Cir.1976), also cited by plaintiff, stated such outgoing mail cannot damage the security interests of jail administration “except on the most speculative theory.” Like the other cases cited by plaintiff, the Ster-rett court was not faced with what seemed to be an actual threat to prison security.
Defendants argue security, order, and discipline are essential requirements at each prison and necessarily involve a retraction of some constitutional rights. Their authority, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), supports that proposition, but the case itself was a class action challenging the constitutionality of certain prison practices, namely double bunking, restrictions on the receipt of packages, and the room-search rule. Nonetheless, the remarks about re *216 traction of constitutional rights serve as a guide in analyzing prisoners’ rights.
An earlier case, Pell v. Procunier, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed. 495 (1974), also cited by defendants, does not apply because the court was faced with balancing free speech rights against the states’ legitimate interest in confining prisoners. But it is helpful in articulating the precept that “central to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves. It is in the light of these legitimate penal objectives that a court must assess challenges to prison regulations based on asserted constitutional rights of prisoners.” Id., p. 823, 94 S.Ct. at 2804.
While it is true prisoners have a constitutional right of access to the courts as cited in plaintiff’s authority, Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), such a statement must be understood as only a general statement and cannot be taken to mean such a right is an unqualified one. In that case, the court was faced with deciding whether prisoners have a right to a prison library; it held they did. Nowhere did the court say such a right goes unrestricted when prison security is at issue.
Defendants also cite State v. Dunn as authorizing the opening of outgoing personal mail. That case did not concern “legal” mail, which is afforded a special status, but, it is important because the letter was opened only after a $100 bill was reported stolen. Just as was the case here, the inmate’s behavior appeared suspicious, prompting the inspection.
The Dunn court relied on Hudson v. Palmer which denied an inmate a reasonable expectation of privacy within his cell entitling him to the protection of the Fourth Amendment. Although plaintiff is not asserting a Fourth Amendment right regarding his cell, the case is helpful because it reinforces the notion that prisoners must suffer a retraction of their rights.
The Hudson and Dunn cases are actually in harmony with the Guajardo and Taylor cases which also recognized the interests of prison officials in maintaining security. But the Guajardo and Taylor courts were not faced with a specific incident involving an actual risk to prison security.
In the case sub judice plaintiff violated orders not to remove anything from the dorm. His actions were suspicious and thus justified the inspection of the envelope. Although plaintiff claims prisoners were told to take whatever they needed, the commissioner and, subsequently the trial court, chose to believe the defendants when they testified to the contrary. As a finder of fact who has the opportunity to observe the demeanor of witnesses, the commissioner’s findings affirmed by the trial court should not be disturbed absent manifest error.
ASSIGNMENT OF ERROR NO. 2
Plaintiff also contends the trial court erred in not awarding compensatory and punitive damages to him for the alleged violation of his constitutional rights.
Since this court affirms the trial court’s dismissal of the case, it is not necessary to discuss this assignment of error.
ASSIGNMENT OF ERROR NO. 3
Plaintiff further contends the trial court erred in finding he did not meet his burden of proof. Plaintiff argues the commissioner’s findings are not supported by the record and cites F.R.C.P. 52(a)[1] as his au *217 thority. F.R.C.P. 52(a) governs federal district courts, but state courts in Louisiana follow an analogous jurisprudential rule which states the trial court is the finder of fact and such findings should not be disturbed absent manifest error. See Arceneaux v. Domingue, 365 So.2d 1330 (1978).
Since this court, for the above-stated reasons, agrees with the findings of fact by the commissioner, and subsequently the trial court, assignment of error No. 3 is dismissed for lack of merit.
Therefore, for the above and foregoing reasons, the judgment of the trial court is affirmed at plaintiff’s cost.
AFFIRMED.

. Rule 52. Findings by the Court
(a) Effect. In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. Requests for findings are not necessary for purposes of review. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. It will be sufficient if the findings of fact and *217 conclusions of law are stated orally and recorded in open court following the close of the evidence or appear in an opinion or memorandum of decision filed by the court. Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b). (Emphasis added).