UNITED STATES of America

v.

**Robert F. CARROZZA, et al., Defendants.**

**Criminal Action No. 97–40009–NMG.**

United States District Court,
D. Massachusetts.

April 6, 1998.

John H. LaChance, Framingham, MA, for Robert F. Carrozza.

Peter Ettenberg, Gould & Ettenberg, Worcester, MA, for Michael P. Romano, Sr.

Brian J. Buckley, Fletcher, Tilton & Whipple, Worcester, MA, for Eugene A. Rida, Jr.

Martin Boudreau, North Quincy, MA, for John M. Arciero.

Robert L. Sheketoff, Sheketoff & Homan, Boston, MA, for Vincent Michael Marino.

W. Theodore Harris, Jr., Harris & Associates, P.C., Worcester, MA, for Nazzaro Ralph Scarpa.

### MEMORANDUM AND ORDER

GORTON, District Judge.

On April 4, 1997, a grand jury returned a 40–count indictment charging Michael P. Romano, Sr. ("Romano"), Eugene A. Rida, Jr. ("Rida") and multiple other defendants with, *inter alia,* violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), RICO Conspiracy and Conspiracy to Commit Murder in Aid of Racketeering. Pending before this Court are 1) Rida's motion to adopt and join in Romano's motion to suppress (Docket No. 331) and 2) Romano's motion to suppress (Docket No. 270).

## I. *Background*

In December, 1996, Romano, then an inmate at the state correctional facility at Plymouth, Massachusetts, sent a letter dated December 16, 1996, to his cousin Rida, an inmate at North Central Correctional Institution in Gardner, Massachusetts ("Gardner"). Employees of Gardner opened the letter pursuant to regulations of the Massachusetts Department of Correction requiring them to open and inspect all incoming, nonprivileged correspondence before delivery to the inmate. The employees also read the letter and forwarded a copy to the Office of Investigations at the Department of Corrections in Boston, Massachusetts, after which it was forwarded in succession to the Massachusetts State Police and the United States Attorney's Office in Boston (collectively "law enforcement officials"). The Gardner employees released the original letter to Rida. Romano and Rida now seek to suppress that letter.

## II. *Analysis*

The defendants argue that the Gardner employees violated their rights under the Fourth and Fourteenth Amendments to the United States Constitution by forwarding Romano's letter to law enforcement officials.[1]

Romano and Rida claim that their reasonable expectations of privacy were violated in contravention of the Fourth Amendment. They do not dispute the fact that Gardner employees had the right to open and read the letter, but simply contend that the act of forwarding a copy of the letter to law enforcement officials violated their reasonable expectations of privacy.

■ Because the initial reading of the letter by Gardner employees was a valid "entry" in constitutional terms, the "plain view" doctrine applies to justify the copying and forwarding of the letter to law enforcement officials. *United States v. Baumgarten,* 517 F.2d 1020, 1028 (8th Cir.1975). *Cf. Hudson v. Palmer,* 468 U.S. 517, 525, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (holding that prisoners have no reasonable expectation of privacy in their prison cells); *State v. Dunn,* 478 So.2d 659, 663 (La.Ct.App.1985) (applying *Hudson* to conclude that prisoners have no reasonable expectation of privacy in inmate letters). The defendants could reasonably expect that the letter would not be opened while in transit between their respective correctional institutions. Knowing, however, that the letter would likely be read by officials at one or both of those institutions, they could not reasonably expect those officials to keep the contents of the letter private.

Although neither party has standing to challenge the forwarding of the letter to law enforcement officials on Fourth Amendment grounds, Rida, as an inmate at Gardner, does have standing to challenge the alleged violation of prison regulations by Gardner employees. He alleges that Gardner employees violated the regulations of the Massachusetts Department of Corrections by forwarding a so-called "approved letter" to law enforcement officials.

State regulations grant prison officials three options with respect to incoming, nonprivileged correspondence; they can 1) approve (send unaltered to the addressee), 2) censor or 3) disapprove (refuse to forward to the addressee) the mail. *See* 103 CMR § 481.15. The regulations describe the circumstances under which prison officials have the discretion to disapprove incoming mail (103 CMR § 481.15(2)) and provide procedural requirements for its disapproval. 103 CMR § 481.16. The latter regulation provides, in relevant part:

> Where criminal activity is suspected, in addition to the foregoing procedures, the matter shall be referred to the appropriate law enforcement agency by the superintendent . . .

103 CMR § 481.16(6).

■ That provision of the regulations constitutes the only specific reference therein to law enforcement agencies. The defendants contend that because that section mandates the forwarding of only disapproved letters, it

---

1. At oral argument on this motion, the defendants abandoned other arguments raised in their supporting memoranda.

implicitly forbids the forwarding of approved letters. The United States Supreme Court has expressly disapproved of such logic. *Sandin v. Conner*, 515 U.S. 472, 483, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) ("we believe that the search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause").

Furthermore, even if, contrary to the finding of this Court, Gardner officials did violate the regulations, that violation does not necessarily raise a constitutional issue. *See United States v. Caceres*, 440 U.S. 741, 752, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979). States may create liberty interests which are protected by the Due Process Clause, but those interests are generally limited to actions that impose atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life. *Sandin*, 515 U.S. at 483–84. The Gardner employees act of forwarding the letter to law enforcement officials did not impose hardships on the inmate defendants sufficient to violate their due process rights.

### ORDER

For the foregoing reasons,

1) Rida's motion to adopt and join in Romano's motion to suppress (Docket No. 331) is **ALLOWED,** and

2) the motion of Romano and Rida to suppress (Docket No. 270) is **DENIED.**

So ordered.