Wendell C. BAKER, Sr., Zoe A. Baker, and Michelle Sapenter, as Next Friend of Ashton D. Baker, a Minor

v.

Michael PUTNAL, Freddie Poor, Dale P. Rogers, and City of Galveston.

Civ. A. No. G–94–172.

United States District Court, S.D. Texas, Galveston Division.

Oct. 14, 1994.

Larry Alton Vick, Frederick K. Wilson, Houston, TX, for plaintiffs.

John Eckel, Mills, Shirley, Eckel & Bassett, Galveston, TX, James Ludlum, Jr., Ludlum & Ludlum, Austin, TX, for Michael Putnal.

John Eckel, Mills, Shirley, Eckel & Bassett, Galveston, TX, for Freddie Poor, Dale P. Rogers, City of Galveston, Tex.

Patrick Champ Wier, pro se.

## MEMORANDUM AND ORDER

KENT, District Judge.

Pending before the Court is Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Also pending before the Court, pursuant to Federal Rule of Civil Procedure 56(c), are a Motion for Summary Judgment by Defendant Michael Putnal as well as a Motion for Summary Judgment by Defendants Freddie Poor and Dale P. Rogers. For the reasons stated below, Defendants' Motion to Dismiss is GRANTED, and therefore this Court will not reach the merits of the other pending motions.

This case was brought under 42 U.S.C. § 1983 and arises out of the alleged wrongful death of Wendell C. Baker, Jr. (hereinafter Decedent). Plaintiffs, as survivors of Decedent, have sued the City of Galveston, as well as Michael Putnal, Freddie Poor, and Dale P. Rogers in both their official and individual capacities.

## I. Background

On Saturday, March 14, 1992, Defendant Michael Putnal, an officer with the Galveston Police Department, was assigned to work Apffel Park, together with Officer George Simpson, for the purpose of monitoring and controlling the crowd. Approximately one hundred cars were located inside the park. Several hundred cars were concentrated among a crowd of about two thousand people outside the west gate of the park. An additional unit was dispatched to help monitor the crowd. As the police officers watched the crowd, two fights broke out. Both ended quickly without the need for police intervention.

Later, two people informed Defendant Putnal that during one of the fights, someone had entered the crowd with a pistol-gripped shotgun. The officers obtained a physical description of the man, but not his name. In addition the witnesses advised Defendant Putnal that the man had put the shotgun into a burgundy Toyota Camry parked approximately one hundred yards away and then returned into the crowd without the gun.

A few minutes later, a large disturbance broke out in the midst of the crowd. Hundreds of people ran in all directions. Gunshots were discharged within the crowd. These shots were fired at such close range as to permit Defendant Putnal to smell the gunpowder from the discharge. Defendant Putnal radioed on Galveston Police Department Channel 4 that shots had been fired. More shots were fired, and people were running and screaming. Defendant could not see his fellow officers. Defendant Putnal radioed again, advising that they had multiple shots fired. In an attempt to gain a better vantage point of the crowd, Defendant Putnal climbed the sand dunes, at which time more shots were fired. Defendant Putnal radioed once again to advise that in excess of fifty shots had been fired.

Defendant Putnal crossed the sand dunes to the north of the crowd. Two people grabbed Defendant Putnal and gestured in the direction of a small red car. The witnesses told Defendant Putnal: "You gotta do something. The dudes that shot that guy are over there by that red car." Defendant Putnal started walking toward the red car, and was halfway to it, when he observed a grey "low-rider" pickup with a burgundy vinyl top. Both doors of the vehicle were open. Two

persons were seated in the pickup. What caught Defendant Putnal's attention was the action of the passenger. The passenger's attention was focused on some activity with his hand, either in his lap or on the seat of the truck. His actions appeared suspicious to Defendant Putnal, so he approached the truck and glanced into it. Defendant Putnal saw the passenger was holding a blue steel semi-automatic handgun in his right hand and a blue steel magazine in his left hand. The magazine was loaded with bullets. Defendant Putnal raised his weapon and ordered the passenger to drop the gun. The passenger then turned in the direction of Defendant Putnal as he simultaneously loaded the magazine into the gun, leveling his gun at Defendant Putnal. Being in fear for his life, Defendant Putnal discharged his weapon at the passenger. The passenger, Wendell C. Baker, Jr., slumped back into the seat. Defendant Putnal then requested Emergency Medical Services (E.M.S.) and advised dispatch that they had an officer involved in a shooting. Wendell C. Baker, Jr., died while en route to the hospital.

Plaintiffs deny that Decedent had committed any acts of aggression toward Defendant Putnal, but alternately contend that even if Decedent had possession of, or was holding a pistol, he did not point the pistol in the direction of Defendant Putnal. As such, the Plaintiffs allege that Defendant Putnal was not justified in using deadly force.

Defendants Freddie Poor and Dale P. Rogers were responsible for the training of all police officers of Defendant City of Galveston in the proper use of firearms and the performance of their duties as police officers. Plaintiffs allege that Defendants Poor and Rogers failed to instruct Defendant Putnal sufficiently in the proper use of firearms.

Plaintiffs further allege that Defendant City of Galveston was negligent in failing to properly train Defendant Putnal to take a precautionary course of action when responding to an emergency call such as that which resulted in the death of Decedent. Since no disciplinary action has been taken by Defendant City against Defendant Putnal, Plaintiffs allege that it may be presumed that Defendant City failed to exercise reasonable

care to ensure that Defendant Putnal was properly trained for the life-threatening, high-risk confrontation which he encountered. Plaintiffs further allege that Defendant Putnal acted in a grossly negligent or reckless manner in that he willfully chose to single-handedly confront the Decedent, and through the use of his pistol, wrongfully took the life of the Decedent.

Plaintiffs state three causes of action under 42 U.S.C. § 1983, alleging that Defendants: (1) deprived Decedent of his right to be secure against unreasonable seizures under the Fourth Amendment; (2) deprived Decedent of his right to be free from cruel and unusual punishment under the Eighth Amendment; and (3) deprived Decedent of his right to life under the Fourteenth Amendment of the United States Constitution.

This Court is aware of the widely divergent allegations of the facts set forth by the Plaintiffs and the Defendants. This Court will not engage in weighing the facts as it would in a Motion for Summary Judgment. Rather, this Court need only evaluate the legitimate evidence necessary to support qualified immunity.

## II. Motion to Dismiss on the Grounds of Qualified Immunity

Defendants move to dismiss Plaintiffs' claims against them individually on the grounds that plaintiffs have not met the heightened pleading standard required when an official of a governmental entity raises the qualified immunity defense.

■ The Supreme Court recently held that because municipalities do not enjoy immunity from § 1983 actions, Plaintiffs who file suit against a municipality do not have to meet the heightened pleading standard. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* —— U.S. ——, ——, 113 S.Ct. 1160, 1162, 122 L.Ed.2d 517 (1993). Therefore, Plaintiffs need not satisfy the heightened pleading standard with regard to their suit against the City of Galveston. The Supreme Court also stated that it was not considering the validity of requiring the heightened pleading standard in cases involving individual government offi-

cials. *Id.* Thus, with regard to the individual Defendants, this Court is required to review Plaintiffs' pleading in accordance with the heightened pleading standard mandated by the Fifth Circuit. *See, e.g., Elliott v. Perez,* 751 F.2d 1472, 1472 (5th Cir.1985); *Cinel v. Connick,* 15 F.3d 1338, 1341 (5th Cir.1994) (where Court declined to resolve the precise scope of *Leatherman* ).

Defendants contend that since they have raised the qualified immunity defense, Plaintiffs must reach the heightened pleading requirement, and since Plaintiffs' claims do not reach this standard, the complaint should be dismissed. Alternatively, Defendants move that the action be dismissed on the basis of qualified immunity.

In opposition, Plaintiffs state that government officers have a duty to take reasonable steps to ascertain whether their actions are lawful, beyond simply relying on their own idea of what the law may be. Plaintiffs allege that the Decedent had a clearly established right to due process of law prior to the unwarranted taking of his life, and that Defendant Putnal violated this right and lost the qualified immunity defense he may have had. Plaintiffs cite *Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984), in which the Court reaffirmed the principle that officials lose their qualified immunity by violating clearly established federal statutory rights.

■ The question of whether qualified immunity will protect an official is one of law for the Court to decide. *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). To be entitled to qualified immunity, a governmental official must have been performing discretionary functions, and his conduct must not have violated clearly established statutory or Constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

■ Essentially, this determination involves the implementation of a two-part test. When considering a Motion to Dismiss, the first prong of this test requires the Court to ascertain whether the Plaintiffs' allegations, if accepted as true, state a claim for a violation of any rights secured under the Constitution. *Salas v. Carpenter,* 980 F.2d 299, 305 (5th Cir.1992); *See Siegert v. Gilley,* 500 U.S. 226, 227, 111 S.Ct. 1789, 1791, 114 L.Ed.2d 277 (1991). Additionally, the Fifth Circuit requires the Plaintiff to "state with factual detail and particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense immunity." *Elliott v. Perez,* 751 F.2d 1472, 1473 (5th Cir.1985). Consequently, a Plaintiff invoking 42 U.S.C. § 1983 must plead "specific facts, not merely conclusory allegations." *Id.* at 1479. If the Plaintiffs fail to specifically state a Constitutional violation, then the Court must dismiss the Plaintiffs' claim. *See Quives v. Campbell,* 934 F.2d 668, 670–71 (5th Cir.1991).

■ If a Plaintiff's complaint does specifically state a Constitutional violation, the Court must then consider whether the right which the governmental official allegedly violated was "clearly established." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. That is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of preexisting law, the unlawfulness must be 'apparent'." *Id.* (citations omitted). If the Plaintiffs cannot demonstrate the clear establishment of the right, then a District Court must dismiss. Yet, if the right is clearly established, then the Court must examine the "objective reasonableness" of the Defendants' conduct in accordance with established law. *Salas v. Carpenter,* 980 F.2d 299, 305 (5th Cir.1992).

### A. Fourth Amendment Claim

■ Constitutional claims of excessive force are governed by the reasonableness standard of the Fourth Amendment. *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989). To prove a Constitutional violation, Plaintiffs have the burden of showing that there is: (1) a significant injury; (2) which resulted di-

rectly and only from the use of force that was clearly excessive to the need; and (3) the excessiveness of which was objectively unreasonable. *Id.*

■ As discussed above, when claiming such a Constitutional violation against a public official, Plaintiffs must meet the heightened pleading standard and may not simply assert conclusory allegations. Plaintiffs have failed to allege specific facts to show a Constitutional violation, and thus they have failed to meet the heightened pleading requirement of the qualified immunity analysis. Plaintiffs allege in conclusory terms that the Decedent was shot by Defendant Putnal, "without provocation or reasonable warning," and they deny that the Decedent had committed any acts of aggression. Yet, Plaintiffs completely fail to discuss the Decedent's specific conduct and actions prior to being shot. Their conclusory allegations fail to set forth specific facts showing that the use of force by Defendant Putnal was excessive to the need and objectively unreasonable. Plaintiffs allege that the Decedent did not point a gun at Defendant Putnal. However, they admit that they do not know whether or not the Decedent had a gun in his possession. Their mere speculation and belief that the Decedent would not have pointed a gun at Defendant Putnal is insufficient to overcome an officer's qualified immunity. *Streetman v. Jordan,* 918 F.2d 555 (5th Cir.1990).

■ With regard to the Constitutional claim of excessive force pursuant to the qualified immunity analysis, the Court concludes that Defendant Putnal's actions in shooting the Decedent were objectively reasonable and not excessive to the need.

The Court notes that there is some dispute as to whether Decedent had a gun. Plaintiffs openly express some doubt as to whether or not Decedent had a gun in his possession. Defendants unambiguously counter with the sworn affidavit testimony of Defendant Putnal that the Decedent did, in fact, have a gun. Plaintiffs further allege that even if Decedent had a gun, he did not aim it at Defendant Putnal. Plaintiffs' assertions are apparently founded upon vague, unarticulated beliefs about the Decedent's character.

This Court is mindful of the volatile situation which Defendant Putnal encountered. Gunshots were fired at close range. People were running in all directions. The crowd was in a frenzy. In this type of crisis situation, the mere displaying of a gun was enough to justify the amount of force used by Defendant Putnal. It is clear to the Court that in this highly charged atmosphere, Defendant Putnal reasonably feared for his life, and therefore finds that Defendant Putnal did not overreact.

This Court is acutely aware of the divergent allegations of the facts. This Court is not undertaking to weigh the merits of the facts as it would were it considering a Motion for Summary Judgment. Rather, this Court is solely seeking to determine the issue of qualified immunity. In so doing, the Court need only evaluate all legitimate evidence to support qualified immunity.

This Court views with great concern the tragic death of Wendell C. Baker, Jr. Of equal concern, the plight of the law enforcement officer, Defendant Putnal, who has been branded with egregious misconduct. The Court is committed to engaging in a conscientious balancing of the public's right to be free from seemingly random police brutality against the interests of law enforcement in being free to use deadly force in self-defense, as well as in the defense of the public.

This Court is well aware of the valuable services performed by law enforcement officials. Officers are daily called upon to place their lives in jeopardy, all in the line of duty. Officers must routinely make split second decisions that can have life-and-death implications for themselves, as well as those they have sworn to protect. When confronted with such a crisis situation, each officer must carefully consider all of the surrounding circumstances. After balancing all of the viable alternatives, the officer should make a reasoned decision with regard to the need to employ deadly force. This Court stresses that the decision to use deadly force is governed by the special facts of each individual case. While this Court declines to second-guess life-and-death decisions made by offi-

cers on the beat, this Court will not condone actions by law enforcement officials that are motivated by a reckless disregard or callous indifference to life.

In the instant case, Defendant Putnal was confronted with a serious threat of physical harm to himself, as well as to several members of the crowd. The possibility that Decedent's action could ignite further violence among the crowd, thus endangering more people, rendered the situation even more critical. Therefore, based on the precise facts of this case, the Court finds that Defendant Putnal is entitled to qualified immunity with respect to the Fourth Amendment claim.

■■■■ With regard to Defendants Poor and Rogers, it is established that supervisory officials can not be vicariously liable for the actions of subordinates. *Doe v. Taylor Independent School District,* 15 F.3d 443, 452 (5th Cir.1994). Where the supervisor is separately liable under a gross negligence or deliberate indifference standard on a failure to train or supervise theory, a three part test is applied: (1) the supervisor must in fact have failed to train or supervise; (2) there was a causal connection between the failure to supervise or train and the violation of the Decedent's right; and (3) that failure amounted to gross negligence or deliberate indifference. *Hinshaw v. Doffer,* 785 F.2d 1260, 1263 (5th Cir.1986). Simple negligence will not support a § 1983 action. *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

■■■■ Plaintiffs here allege only that Defendants Poor and Rogers trained Putnal "in accordance" with the statutes, ordinances, regulations, customs, and usages of the City and of the State.[1] Presumably, those standards were the correct standards. Moreover, the Court has above found that Defendant Putnal acted properly in the precise circumstances of this case. Plaintiffs allege no incorrect training, and Defendant Putnal's training was adequate to provide for his proper handling of this crisis. Therefore, lacking any showing of a complete absence of training or of training so deficient as to rise

to the level of gross negligence or deliberate indifference, the Court finds that Defendants Poor and Rogers are entitled to qualified immunity with respect to the Fourth Amendment claim.

### B. The Eighth Amendment Claim

■■■■ Plaintiffs bring a cause of action under the Eighth Amendment. However, under the facts as plead, the Eighth Amendment has no application. The Decedent had not been arrested, and had not been convicted, so that the Eighth Amendment punishment considerations do not apply. The Supreme Court has established that the Eighth Amendment protects only those who have been convicted. *Ingraham v. Wright,* 430 U.S. 651, 664, 97 S.Ct. 1401, 1408, 51 L.Ed.2d 711 (1977). A pre-trial detainee cannot state a cause of action under the Eighth Amendment. *Thibodeaux v. Bordelon,* 740 F.2d 329, 334 (5th Cir.1984). Therefore, Plaintiffs have no cognizable action against Defendants under the Eighth Amendment.

### C. Fourteenth Amendment Claim

■■■■ Plaintiffs allege that Decedent was deprived of his right to life under the Fourteenth Amendment. There is no question about the fundamental interest in a person's own life, but it does not follow that a taking of life is a Constitutional deprivation. *Young v. City of Killeen, Texas,* 775 F.2d 1349, 1353 (5th Cir.1985). The government has the right to employ deadly force under some circumstances, and there are interests to be balanced in deciding the reach of Constitutional demand. *See Tennessee v. Garner,* 471 U.S. 1, 8–10, 105 S.Ct. 1694, 1700, 85 L.Ed.2d 1, 8–9 (1985).

■■■■ The Court looks for the element of abuse of government power if tortious harm is to be raised to the level of a Constitutional violation. *Rankin v. City of Wichita Falls,* 762 F.2d 444 (5th Cir.1985); *Williams v. Kelley,* 624 F.2d 695 (5th Cir.1980); *cert denied,* 451 U.S. 1019, 101 S.Ct. 3009, 69 L.Ed.2d 391 (1981). Where a law enforcement officer inflicts bodily injury on a person, the Court weighs "the amount of force

---

1. *See* paragraph 8.1 of Plaintiffs' Original Complaint.

used in relationship to the need presented, the extent of the injury inflicted, and the motives of the State officer." *Shillingford v. Holmes,* 634 F.2d 263, 265 (5th Cir.1981).

■ If Decedent's movements gave Defendant Putnal cause to believe that there was a threat of serious physical harm, Defendant Putnal's use of deadly force was not a Constitutional violation. *Tennessee v. Garner,* 471 U.S. at 11–12, 105 S.Ct. at 1701, 85 L.Ed.2d at 9–10.

As discussed above, Defendant Putnal was confronted with an explosive situation. The Decedent's actions caused Defendant Putnal to believe that there was a serious threat of physical harm. Thus, this Court finds that in these unique circumstances, Defendant's use of deadly force did not rise to a Constitutional violation.

### III. Sovereign Immunity

■ To establish a claim for municipal liability, under § 1983, Plaintiffs must identify in their pleading: (1) a policy; (2) of a local governmental entity's final policy-maker; (3) that caused; (4) the Plaintiffs to be subjected to a deprivation of a Constitutional right. *Grandstaff v. City of Borger,* 767 F.2d 161, 169 (5th Cir.1985); *cert denied,* 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987). Defendant City of Galveston moves to dismiss the Plaintiffs' claims because Plaintiffs have failed to identify a policy of the City in their Complaint which would render the City liable.

■ Plaintiffs claim that Decedent's due process rights were violated, as a result of the carelessness, negligence and gross negligence and/or recklessness of Defendant City, its agents, and police employees. Specifically, Plaintiffs allege that Defendant City: (1) failed to instruct Defendants Putnal, Poor, and Rogers in the use of firearms; (2) provided Defendant Putnal with lawful authority to use a pistol in the course of his employment without giving him sufficient experience in the use thereof; (3) required police officers to purchase their own bullets, including hollow point bullets; (4) failed to require Defendant Putnal to become skillful in the handling of pistols when the Defendants knew or should have known that high-risk confrontations would readily arise in the course and duties of a police officer, wherein it would be necessary to shoot for the protection of life and property; (5) failed to anticipate that Defendant Putnal might injure or cause death to innocent persons by reason of insufficient practice and experience; and (6) permitted Defendant Putnal to carry a pistol in the course of his duties without giving training in the handling of a pistol during emergencies or high-risk confrontations.

A policy for § 1983 purposes may consist of affirmative acts or omissive acts of acquiescence in a longstanding practice or custom which constitutes the "standard operating procedure" of the local governmental entity. *Jett v. Dallas Independent School District,* 491 U.S. 701, 737, 109 S.Ct. 2702, 2724, 105 L.Ed.2d 598 (1989). The failure to train, the failure to supervise, and the failure to respond arise within the ambit of the latter classification.

The Supreme Court has dealt with this issue in *City of Oklahoma v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). In *Tuttle* a person was shot and killed by a police officer. The decedent's family sued on the grounds that the officer's excessive use of force was caused by a municipal policy of inadequate training of officers. The Supreme Court, in a plurality opinion written by Justice Rehnquist, stated that "policy generally implies a course of action consciously chosen from among various alternatives." *Id.* at 823, 105 S.Ct. at 2436. Hence, there is no such thing as a policy of inadequate training absent proof that "the inadequacies resulted from conscious choice—that is, proof that the policy-makers deliberately chose a training program which would prove inadequate." *Id.*

The consensus among lower courts, including the Fifth Circuit, is that government inaction constitutes official policy only if there is "deliberate indifference" or "callous disregard" amounting to a tacit authorization or encouragement of the wrongful conduct. *See Grandstaff v. City of Borger,* 767 F.2d 161 (5th Cir.1985); *cert denied,* 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987). Liability under this standard also necessitates that policy-making officials have actual

knowledge of the misconduct or that the misconduct be so widespread or persistent that constructive knowledge of it may be imputed to the officials. *See Bennett v. City of Slidell,* 735 F.2d 861, 862 (5th Cir.1984); *cert denied,* 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985).

This Court finds that there was no "deliberate indifference" or "callous disregard" on the part of the City of Galveston. Furthermore, as discussed above, this Court finds that Defendant Putnal committed no Constitutional violation in this particular case, and therefore, no wrong-doing can be properly attributed to Defendant City of Galveston.

## IV. State Tort Claims

 Plaintiffs allege several State tort claims. Specifically, Plaintiffs bring a wrongful death action on the grounds that Defendant Putnal acted in a grossly negligent manner, engaged in willful misconduct, and acted with a reckless disregard for the life of Decedent. Plaintiffs further contend that Defendant City of Galveston was negligent in failing to properly train Defendant Putnal.

Under 28 U.S.C. § 1367, this Court is accorded wide discretion in its adjudication of State court claims. Section 1367 provides in relevant part:

(a) Except as provided in subsection (b) and (c) or as expressly provided otherwise by Federal statute, in any civil ACTION of which the DISTRICT COURTS have original JURISDICTION, the DISTRICT COURTS shall have SUPPLEMENTAL JURISDICTION OVER all other CLAIMS that are so related to the CLAIMS in the ACTION within such original JURISDICTION that they form part of the same case or controversy under Article III of the United States Constitution. Such SUPPLEMENTAL JURISDICTION shall include CLAIMS that involve joinder or intervention of additional parties

. . .

(c) The DISTRICT COURTS may decline to exercise SUPPLEMENTAL JURISDICTION OVER a CLAIM under subsection (a) if—

(1) the CLAIM raises a novel or complex issue of STATE LAW,

(2) the CLAIM substantially predominates OVER the CLAIM or CLAIMS OVER which the DISTRICT COURT has original JURISDICTION

(3) the DISTRICT COURT has dismissed all CLAIMS OVER which has original JURISDICTION, or

(4) in exceptional circumstances, there are other compelling reasons for declining JURISDICTION.

Pursuant to § 1367(c)(3), this Court declines to hear Plaintiffs State Court claims. Thus, Plaintiffs State court claims are HEREBY DISMISSED.

## V. Conclusion

In light of the foregoing, the Court HEREBY GRANTS Defendants Motion to Dismiss. Defendants' Motions for Summary Judgment are therefore moot.

The Court HEREBY DISMISSES all of Plaintiffs' federal claims under § 1983 WITH PREJUDICE. Plaintiffs' State Court claims are DISMISSED WITHOUT PREJUDICE. Subject to the limitations period, which may already have expired, Plaintiffs are respectfully urged to assert *proper* claims in State Court, for appropriate violations of *State* law.

Furthermore, the parties are ORDERED to file nothing further on this issue in this Court, especially Motions to Reconsider or the like, *unless* they can present *compelling* and *relevant* new evidence or legal authority which they could not, through the exercise of due diligence, have presented on original submission of this motion. *Any and all* further relief on this issue shall be sought in due course from the United States Court of Appeals for the Fifth Circuit. The parties shall each bear their own costs incurred herein to date.

IT IS SO ORDERED.

### *FINAL JUDGMENT*

For the reasons set forth in the Court's Order granting Defendants' Motions to Dismiss under Rule 12(b)(6), all Federal claims are DISMISSED WITH PREJUDICE. All State claims are DISMISSED WITHOUT

PREJUDICE. The Court cautions the Plaintiff that the appropriate limitations period for filing in State Court may be fast approaching, or may have already expired.

As to all Defendants, THIS IS A FINAL JUDGMENT. The parties shall each bear their own costs incurred herein to date.